FILED
NOVEMBER 7, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

07 C 6318

JUDGE HOLDERMAN
MAGISTRATE JUDGE COLE

CEM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXCAVATING, GRADING, ASPHALT, PRIVATE SCAVENGERS, AUTOMOBILE SALESROOM GARAGE ATTENDANTS AND LINEN AND LAUNDRY DRIVERS, LOCAL NO. 731, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, <br><br> Plaintiff, <br><br> v. <br><br> LECHNER AND SONS, <br><br> Defendant. | Case No. |

COMPLAINT

Plaintiff Excavating, Grading, Asphalt, Private Scavengers, Automobile Salesroom Garage Attendants and Linen And Laundry Drivers, Local No. 731, International Brotherhood of Teamsters ("Local 731") brings this action against defendant Lechner and Sons ("Lechner") to compel an arbitration proceeding, and states:

1.     Plaintiff Local 731 is a labor organization within the meaning of the Labor Management Relations Act ("LMRA") Section 301(a), 29 U.S.C. §185(a), which maintains its principal offices in this district. Local 731 brings this action on behalf of the Lechner employees whom it represents for purposes of collective bargaining.

2.     Defendant Lechner is an Illinois corporation in good standing that maintains offices and conducts business within this district. Lechner is an employer within the meaning of LMRA Section 301(a), 29 U.S.C. §185(a).

3.     This court has jurisdiction over this matter pursuant to 29 U.S.C. §185(a) and 28 U.S.C. §1331, and the provisions of the Federal Arbitration Act, 9 U.S.C. §§1, et seq., are applicable to it.

4.     Venue is proper in this district pursuant to 29 U.S.C. §185(c) and 28 U.S.C. § 1391.

5.     Local 731 has maintained successive labor agreements with Lechner, the most recent of which is effective by its terms from May 1, 2006 to April 30, 2010 (the "Agreement"). A copy of relevant portions of the Agreement are attached as Exhibit A.

6.     Article 29 of the Agreement contains a procedure to resolve grievances that arise under the Agreement, culminating in final and binding arbitration of grievances.   Section 29.1 of the Agreement defines a grievance as follows:

> Grievance means a dispute or claim arising under this Agreement, and involving the interpretation or application of, or compliance with any provisions of this Agreement.

7.     During the period after execution of the Agreement but prior to July 3, 2007, some Lechner employees represented by Local 731 refused to enter Lechner property by honoring a primary picket line established there in support of a strike by another labor organization that represents other Lechner employees.

8.     Article 35 of the Agreement states, in relevant part:

> It shall not be a violation of this Agreement and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a lawful primary labor dispute . . . , including lawful primary picket lines at the Employer's place of business.

9. The Agreement also contains a Union recognition clause (Article 3), a prohibition on suspensions without pay and discharges unless there is just cause (Article 5), a prohibition on discrimination against employees due to union activities (Article 28), and a prohibition on any discipline of non-probationary employees without just cause (Article 29).

10. On or about July 3, 2007, Lechner refused to reinstate the Local 731-represented employees notwithstanding their request to return to work.

11. On July 3, 2007, Local 731 filed a grievance over Lechner's refusal to reinstate its Local 731-represented employees who had honored the picket line at Lechner's place of business (the "Grievance").  Local 731 alleged that Lechner's conduct violated Articles 3, 5, 28, 29, 35, and all other applicable articles of the Agreement.  Local 731 requested immediate arbitration of the Grievance.

12. By letter dated July 10, 2007, Lechner denied the Grievance.  By letter dated July 11, 2007, Local 731 requested that Lechner either convene the remaining steps of the grievance procedure or proceed directly to arbitration of the Grievance.  Lechner made no response to the July 11 letter.

13. On August 3, 2007, pursuant to Article 29 of the Agreement and Local 731's request, the Federal Mediation and Conciliation Service submitted a panel of arbitrators to Lechner and Local 731 from which each party was to alternately strike names until one arbitrator remained on the list who would hear and decide the Grievance.

14. By letter dated September 12, 2007, Lechner contended that the Grievance was not arbitrable and advised that it would arbitrate only its objections to arbitrability and not the merits of the Grievance.

15. By letter dated September 25, 2007 Local 731 advised that Lechner may raise all its objections to arbitrability before the arbitrator but it may not otherwise refuse to arbitrate the Grievance or restrict the scope of arbitration, and the arbitrator shall determine how to consider Lechner's objections to arbitrability.

16. By letter dated October 2 2007 Lechner advised that it will arbitrate its procedural objections to arbitrability and nothing more.

17. At all times since August 3, 2007, Lechner has failed and refused to participate in selecting an arbitrator and proceed to arbitration of the Grievance as required under Article 29 of the Agreement.

18. By the conduct described above, Lechner has breached its labor agreement with Local 731 in violation of LMRA Section 301.

WHEREFORE, plaintiff Local 731 respectfully requests that this Court enter the following relief:

1. Order Lechner and Sons to proceed with selection of an arbitrator from the August 3, 2007 Federal Mediation and Conciliation Service panel in the manner required under the Agreement;

2. Order Lechner and Sons to proceed to final and binding arbitration of the Grievance with the arbitrator who is selected; and

3. Grant plaintiff such other relief as this Court deems just and proper.

Case 1:07-cv-06318   Document 1   Filed 11/07/2007   Page 5 of 17

          Respectfully submitted,


            /s/ Robert E. Bloch
          Robert E. Bloch
          One of the attorneys for plaintiff

Robert E. Bloch
Ronald W. Willis
Steven W. Jados
DOWD, BLOCH & BENNETT
8 S. Michigan Avenue
19th floor
Chicago, IL 60603
312-372-1361

FILED
NOVEMBER 7, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

07 C 6318

JUDGE HOLDERMAN
MAGISTRATE JUDGE COLE

CEM

# LINEN AND INDUSTRIAL LAUNDRY AGREEMENT

by and between

## TEAMSTERS LOCAL UNION NO. 781

affiliated with the

### INTERNATIONAL BROTHERHOOD OF TEAMSTERS

and

### LECHNER AND SONS



effective

May 1, 2006 through April 30, 2010



EXHIBIT A

## TABLE OF CONTENTS

| ARTICLE | | PAGE |
|---|---|---|
| 1 | DEFINITIONS | 1 |
| 2 | SIGNERS OF AGREEMENT | 2 |
| 3 | UNION RECOGNITION, SECURITY AND CHECK-OFF | 2 |
| 4 | UNION AND OFFICERS LIABILITY | 3 |
| 5 | DISCHARGE, SUSPENSION AND WARNING NOTICES | 4 |
| 6 | MEDICAL LEAVE | 5 |
| 7 | OTHER AGREEMENTS | 6 |
| 8 | WAGE SCALES-TIME RECORD | 6 |
| 9 | ROUTE SPLITS | 11 |
| 10 | FIVE-DAY WEEK | 11 |
| 11 | HOLIDAYS AND SUNDAY | 12 |
| 12 | REGULATIONS AS TO C.O.D. BUSINESS | 12 |
| 13 | PAY DAYS-FAILURE TO PAY AT TIME OF DISMISSAL SETTLEMENT FOR OUTSTANDING ACCOUNTS | 13 |
| 14 | RESPONSIBILITY OF EMPLOYEE DUE TO ROBBERIES AND THEFTS | 13 |
| 15 | EMPLOYEES AUTHORIZED EXPENSES | 13 |
| 16 | UNIFORMS | 13 |
| 17 | SICK DAYS | 13 |
| 18 | VACATIONS | 13 |
| 19 | SALES AND TRANSFERS | 15 |
| 20 | CHECKING RECORDS | 16 |
| 21 | EQUIPMENT INSPECTION/TRUCK MAINTENANCE | 16 |
| 22 | RESPONSIBILITY OF EMPLOYEES PERTAINING TO CITY AND STATE ORDINANCES | 17 |
| 23 | LAVATORIES | 18 |
| 24 | FUNERAL LEAVE | 18 |
| 25 | HEALTH AND WELFARE | 18 |
| 26 | PENSION FUND | 21 |
| 27 | SEPARABILITY AND SAVINGS CLAUSE | 23 |
| 28 | NON-DISCRIMINATION | 23 |
| 29 | GRIEVANCE AND ARBITRATION PROCEDURES | 23 |
| 30 | EMPLOYEE'S BOND | 28 |
| 31 | BULLETIN BOARD ACCESS | 29 |
| 32 | D.R.I.V.E. AUTHORIZATION AND DEDUCTION | 29 |
| 33 | MILITARY LEAVE | 29 |
| 34 | UNIFORM DRUG POLICY | 29 |
| 35 | PROTECTION OF RIGHTS | 30 |
| 36 | EFFECTIVE DATE | 30 |
| 37 | TERM OF AGREEMENT | 30 |

# LINEN AND INDUSTRIAL LAUNDRY AGREEMENT

THIS AGREEMENT MADE EFFECTIVE THIS FIRST DAY OF MAY 1, 2006 BY AND BETWEEN LECHNER AND SONS, (HEREINAFTER REFERRED TO AS "EMPLOYER") AND EXCAVATING, GRADING, ASPHALT, PRIVATE SCAVENGERS, SALESROOM GARAGE ATTENDANTS AND LINEN AND LAUNDRY DRIVERS, LOCAL UNION NO. 731, AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS (HEREINAFTER REFERRED TO AS "UNION"), ACTING AS THE SOLE AND EXCLUSIVE BARGAINING AGENT FOR ITS MEMBERS.

## WHEREAS

IT IS THE INTENT AND PURPOSE OF THIS AGREEMENT TO PROMOTE AND IMPROVE INDUSTRIAL RELATIONS BETWEEN THE EMPLOYER AND ITS EMPLOYEES; AID TOWARD THE ECONOMICAL AND PROFITABLE OPERATION OF THE BUSINESS; MAKE REASONABLE PROVISIONS FOR THE SAFETY AND HEALTH OF THE EMPLOYEES; ACCOMPLISH AND MAINTAIN THE HIGHEST EFFICIENCY AND QUALITY OF WORK PERFORMANCE; PROVIDE METHODS FOR A PROMPT AND PEACEFUL ADJUSTMENT OF GRIEVANCES; INSURE AGAINST ANY INTERRUPTION OF WORK, SLOWDOWN, OR OTHER INTERFERENCE WITH WORK PERFORMANCE; STRENGTHEN GOOD WILL, MUTUAL RESPECT, AND COOPERATION; AND SET FORTH THE AGREEMENT COVERING RATES OF PAY, HOURS OF WORK, AND OTHER CONDITIONS OF EMPLOYMENT TO BE OBSERVED BETWEEN THE PARTIES TO THIS AGREEMENT.

## ARTICLE 1 – DEFINITIONS

SECTION 1.1 WHENEVER THE WORD "EMPLOYER" IS USED HEREIN, IT SHALL REFER TO LECHNER AND SONS.

SEC. 1.2 WHENEVER THE WORD "UNION" IS USED HEREIN, IT SHALL REFER TO EXCAVATING, GRADING, ASPHALT, PRIVATE SCAVENGERS, AUTOMOBILE SALESROOM GARAGE ATTENDANTS, AND LINEN AND LAUNDRY DRIVERS, LOCAL UNION NO. 731, AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AND ALL ITS MEMBERS, INDIVIDUALLY AND COLLECTIVELY BOUND HEREUNDER AFFECTED BY THIS AGREEMENT.

SEC. 1.3 WHENEVER THE WORD "EMPLOYEE" OR "EMPLOYEES" IS USED HEREIN, IT SHALL REFER TO THE EMPLOYEE OR EMPLOYEES IN THE CLASSIFICATIONS OF WORK COVERED BY THIS AGREEMENT.

## ARTICLE 2 – SIGNERS OF AGREEMENT

SECTION 2.1 UPON THE EXECUTION OF THIS AGREEMENT BY THE PROPER OFFICIALS OF THE EMPLOYER AND THE PROPER OFFICERS OF THE UNION, THIS CONTRACT SHALL BE BINDING ON THE RESPECTIVE PARTIES AND ALL EMPLOYEES PERFORMING BARGAINING UNIT WORK.

## ARTICLE 3 – UNION RECOGNITION, SECURITY AND CHECK-OFF

SECTION 3.1 THE EMPLOYER RECOGNIZES THE UNION AS THE SOLE AND EXCLUSIVE BARGAINING REPRESENTATIVE FOR ROUTE SALESMEN HEREINAFTER REFERRED TO AS "EMPLOYEES", WITHIN THE JURISDICTION OF THE UNION.

SEC. 3.2 ALL PRESENT EMPLOYEES WHO ARE MEMBERS OF THE UNION ON THE EFFECTIVE DATE OF THIS SUBSECTION OR ON THE DATE OF EXECUTION OF THIS AGREEMENT, WHICHEVER IS THE LATER, SHALL REMAIN MEMBERS IN GOOD STANDING OF THE UNION TO THE MAXIMUM EXTENT PERMITTED BY LAW AS A CONDITION OF EMPLOYMENT. ALL PRESENT EMPLOYEES WHO ARE NOT MEMBERS OF THE UNION AND WHO PERFORM BARGAINING UNIT WORK AND ALL EMPLOYEES WHO ARE HIRED HEREAFTER TO PERFORM BARGAINING UNIT WORK SHALL BECOME AND REMAIN MEMBERS IN GOOD STANDING OF THE UNION TO THE MAXIMUM EXTENT PERMITTED BY LAW AS A CONDITION OF CONTINUED EMPLOYMENT ON AND AFTER THE 31ST DAY FOLLOWING THE BEGINNING OF THEIR EMPLOYMENT, OR ON AND AFTER THE 31ST DAY FOLLOWING THE EFFECTIVE DATE OF THIS SECTION OR THE EXECUTION DATE OF THIS AGREEMENT, WHICHEVER IS THE LATER. THIS PROVISION SHALL BE MADE AND BECOME EFFECTIVE AS OF SUCH TIME AS IT MAY BE MADE AND BECOME EFFECTIVE UNDER THE PROVISIONS OF THE NATIONAL LABOR RELATIONS ACT, BUT NOT RETROACTIVELY. ANY EMPLOYEE WHO HAS FAILED TO ACQUIRE OR THEREAFTER MAINTAIN MEMBERSHIP IN THE UNION TO THE EXTENT OF PAYMENT OF THE DUES, INITIATION FEES, AND/OR ASSESSMENTS UNIFORMLY REQUIRED BY THE UNION AS A CONDITION OF ACQUIRING OR MAINTAINING MEMBERSHIP IN THE UNION SHALL BE TERMINATED SEVENTY-TWO (72) HOURS AFTER THE EMPLOYER HAS RECEIVED WRITTEN NOTICE CERTIFYING THAT MEMBERSHIP HAS BEEN AND IS CONTINUING TO BE OFFERED TO SAID EMPLOYEE ON THE SAME BASIS AS ALL OTHER EMPLOYEES, AND THAT SAID EMPLOYEE HAS HAD WRITTEN NOTICE AND OPPORTUNITY TO MAKE PAYMENT OF ALL DUES, INITIATION FEE, ASSESSMENTS, REINITIATION OR REINSTATEMENT FEES.

SEC. 3.3 THE EMPLOYER SHALL DEDUCT FROM THE PAY OF ALL EMPLOYEES ALL DUES AND INITIATION FEES WHICH HAVE BEEN AUTHORIZED IN WRITING BY THE MEMBER EMPLOYEE CONCERNED. THE UNION SHALL FURNISH THE EMPLOYER WITH SIGNED INDIVIDUAL CHECK-OFF AUTHORIZATION CARDS WHICH GIVE THE EMPLOYER THE AUTHORITY TO MAKE SUCH PAYROLL DEDUCTIONS. MONIES SO COLLECTED SHALL BE REMITTED TO THE UNION NOT LATER THAN THE TWENTIETH (20TH) DAY OF THE CURRENT MONTH.

SEC. 4.4  IN THE EVENT OF ANY CONCERTED UNAUTHORIZED STRIKE, SLOW-DOWN, WALK-OUT OR ANY UNAUTHORIZED CESSATION OF WORK, THE EMPLOYER, DURING THE FIRST TWENTY-FOUR (24) HOUR PERIOD OF SUCH UNAUTHORIZED WORK STOPPAGE, SHALL HAVE THE RIGHT OF REASONABLE DISCIPLINE SHORT OF DISCHARGE, AND AFTER THE FIRST TWENTY-FOUR (24) HOUR PERIOD OF SUCH UNAUTHORIZED STOPPAGE, AND IF SAID UNAUTHORIZED STOPPAGE CONTINUES, HOWEVER, THE EMPLOYER SHALL HAVE THE RIGHT WITHIN ITS DISCRETION IMMEDIATELY TO DISCHARGE ANY EMPLOYEE COVERED BY THIS AGREEMENT PARTICIPATING IN SUCH UNAUTHORIZED ACTIVITY.

SEC. 4.5 IT IS FURTHER STIPULATED AND AGREED BY AND BETWEEN THE PARTIES TO THIS AGREEMENT, THAT BY THE ACT OF THE INTERNATIONAL UNION APPROVING THIS CONTRACT AS TO FORM AND SUBSTANCE, THE SAID INTERNATIONAL UNION, ITS OFFICERS OR AGENTS SHALL NOT IN ANY MANNER BECOME A PARTY TO THIS AGREEMENT, NOR IS THERE ANY DUTY OR OBLIGATION IMPOSED UPON THE INTERNATIONAL UNION, ITS OFFICERS OR AGENTS RESPECTING THE TERMS AND CONDITIONS OF THIS AGREEMENT IN ANY MANNER WHATSOEVER.

SEC. 4.6  IT IS FURTHER STIPULATED AND AGREED THAT THE APPROVAL AS TO FORM AND SUBSTANCE IS FOR THE PURPOSE OF INDICATING ONLY THAT THE INTERNATIONAL UNION CERTIFIES THAT THE SAID CONTRACT IS NOT IN VIOLATION OF THE INTERNATIONAL CONSTITUTION AND BY-LAWS AND NOT FOR OTHER PURPOSES.

## ARTICLE 5 – DISCHARGE / SUSPENSION AND WARNING NOTICES

SECTION 5.1 NO EMPLOYEE SHALL BE SUSPENDED WITHOUT PAY, DISCHARGED OR GIVEN A WRITTEN WARNING WITHOUT JUST CAUSE.  THE EMPLOYER SHALL PROMPTLY FURNISH THE EMPLOYEE AND THE UNION WITH A STATEMENT, IN WRITING, SETTING FORTH THE REASON FOR THE ACTION TAKEN.  ANY DISCIPLINARY ACTION TAKEN MAY BE THE SUBJECT OF A GRIEVANCE AND OF ARBITRATION.  NO EMPLOYEE SHALL BE SUSPENDED WITHOUT PAY, UNLESS AT LEAST TWO (2) WARNING NOTICES HAVE BEEN ISSUED IN WRITING TO THE EMPLOYEE, WITH A COPY TO THE UNION.

WARNING NOTICES SHALL EXPIRE AFTER TWELVE (12) MONTHS; HOWEVER, THEY SHALL REMAIN IN EMPLOYEE'S FILE AS DOCUMENTATION TO HIS PERMANENT RECORD.

ANY AND ALL DISCIPLINARY ACTION SHALL BE SUBJECT TO THE GRIEVANCE PROCEDURE AS DEFINED AND IN ACCORDANCE WITH THE GRIEVANCE PROCEDURE AS STATED IN ARTICLE 29 OF THE AGREEMENT.

SEC. 26.10  THE OBLIGATION TO MAKE PENSION CONTRIBUTIONS SHALL CONTINUE DURING PERIODS WHEN A NEW COLLECTIVE BARGAINING AGREEMENT IS BEING NEGOTIATED, UNLESS THERE IS A WORK STOPPAGE OR LOCKOUT.

## ARTICLE 27 – SEPARABILITY AND SAVINGS CLAUSE

SECTION 27.1  IF ANY ARTICLE OR SECTION OF THIS CONTRACT OR OF ANY RIDERS THERETO SHALL BE HELD INVALID BY OPERATION OF LAW OR BY ANY TRIBUNAL OF COMPETENT JURISDICTION, OR IF COMPLIANCE WITH OR ENFORCEMENT OF ANY ARTICLE OR SECTION SHOULD BE RESTRAINED BY SUCH TRIBUNAL PENDING A FINAL DETERMINATION AS TO ITS VALIDITY, THE REMAINDER OF THIS CONTRACT AND OF ANY RIDER THERETO, OR THE APPLICATION OF SUCH ARTICLE OR SECTION TO PERSONS OR CIRCUMSTANCES OTHER THAN THOSE AS TO WHICH IT HAS BEEN HELD INVALID, OR AS TO WHICH COMPLIANCE WITH OR ENFORCEMENT OF HAS BEEN RESTRAINED, SHALL NOT BE AFFECTED THEREBY.

SEC. 27.2 IN THE EVENT THAT ANY ARTICLE OR SECTION IS HELD INVALID OR ENFORCEMENT OF OR COMPLIANCE WITH WHICH HAS BEEN RESTRAINED AS ABOVE SET FORTH, THE PARTIES AFFECTED THEREBY SHALL ENTER INTO IMMEDIATE COLLECTIVE BARGAINING NEGOTIATIONS UPON THE REQUEST OF THE UNION OR THE EMPLOYER FOR THE PURPOSE OF ARRIVING AT A MUTUALLY SATISFACTORY REPLACEMENT FOR SUCH ARTICLE OR SECTION DURING THE PERIOD OF INVALIDITY OR RESTRAINT. IF THE PARTIES DO NOT AGREE ON A MUTUALLY SATISFACTORY REPLACEMENT, EITHER PARTY SHALL BE PERMITTED ALL LEGAL OR ECONOMIC RECOURSE IN SUPPORT OF ITS DEMANDS, NOTWITHSTANDING ANY PROVISION IN THIS CONTRACT TO THE CONTRARY.

## ARTICLE 28 – NON DISCRIMINATION

SECTION 28.1  AS PROVIDED BY FEDERAL, STATE, AND LOCAL LAWS, THE EMPLOYER AND THE UNION AGREE THAT THEY SHALL NOT DISCRIMINATE AGAINST ANY EMPLOYEE ON THE BASIS OF RACE, COLOR, CREED, RELIGION, SEX, NATIONAL ORIGIN, AGE OR DISABILITY.
SEC. 28.2 ALL REFERENCES IN THIS AGREEMENT TO PERSONS OF ONE GENDER SHALL MEAN PERSONS OF EITHER GENDER.

SEC. 28.3 THE EMPLOYER, ITS AGENTS AND SUPERVISORY EMPLOYEES, WILL NOT DISCRIMINATE AGAINST, INTERFERE WITH, RESTRAIN OR COERCE ITS EMPLOYEES BECAUSE OF MEMBERSHIP IN THE UNION OR DULY AUTHORIZED ACTIVITIES OF THE UNION.

## ARTICLE 29 – GRIEVANCE AND ARBITRATION PROCEDURES

SECTION 29.1 IT IS THE PURPOSE OF THIS AGREEMENT TO PROVIDE THE PROCEDURE FOR THE PROMPT AND EQUITABLE ADJUSTMENT OF GRIEVANCES.  GRIEVANCE MEANS A DISPUTE OR CLAIM ARISING UNDER THIS AGREEMENT, AND INVOLVING THE INTERPRETATION OR APPLICATION OF, OR COMPLIANCE WITH ANY PROVISIONS OF THIS AGREEMENT.

SEC. 29.2 THE FOLLOWING THREE (3) STEPS SHALL BE UTILIZED IN THE PROCEDURE FOR CONSIDERATION OF GRIEVANCES:

**STEP 1.** THE UNION OR ANY EMPLOYEE WHO HAS A GRIEVANCE SHALL DISCUSS THE ISSUE WITH THE IMMEDIATE SUPERVISOR WITHIN THIRTY (30) CALENDAR DAYS AFTER THE UNION OR EMPLOYEE AFFECTED HAS KNOWLEDGE OR SHOULD HAVE HAD KNOWLEDGE OF THE EVENT. THE IMMEDIATE SUPERVISOR SHALL GIVE HIS ANSWER TO THE GRIEVANCE WITHIN SEVEN (7) CALENDAR DAYS AFTER THE DISCUSSION AS STATED ABOVE. HOWEVER, AN EMPLOYEE WHOSE EMPLOYMENT HAS BEEN TERMINATED MUST FILE A WRITTEN GRIEVANCE WITH THE EMPLOYER WITHIN EIGHT (8) CALENDAR DAYS AFTER TERMINATION OF EMPLOYMENT, AND IF HE FAILS TO DO SO, HE SHALL HAVE NO RECOURSE OR BE ENTITLED TO ANY PAYMENT UNDER THIS AGREEMENT.

**STEP 2.** IF THE GRIEVANCE IS NOT SETTLED IN STEP 1 AND THE EMPLOYEE OR THE UNION DESIRES TO APPEAL, THEN THE GRIEVANCE SHALL BE REDUCED TO WRITING AND SUBMITTED TO THE GENERAL MANAGER OR HIS DESIGNATED REPRESENTATIVE WITHIN TEN (10) CALENDAR DAYS OF THE ANSWER IN STEP 1 ABOVE. THE UNION AND THE DESIGNATED EMPLOYER REPRESENTATIVE SHALL MEET WITHIN THIRTY (30) DAYS THEREAFTER TO DISCUSS THE GRIEVANCE. THE EMPLOYER REPRESENTATIVE SHALL GIVE HIS ANSWER TO THE GRIEVANCE, IN WRITING, WITHIN TEN (10) CALENDAR DAYS AFTER THE MEETING IN STEP 2.

**STEP 3.** IN THE EVENT THE GRIEVANCE IS NOT SETTLED IN STEP 2, IT MAY THEN BE REFERRED, BY EITHER THE UNION OR THE EMPLOYER, TO ARBITRATION BY GIVING WRITTEN NOTICE TO THE OTHER PARTY OF ITS INTENTION TO DO SO WITHIN THIRTY (30) CALENDAR DAYS OF THE ANSWER IN STEP 2.

THE UNION AND THE EMPLOYER MAY AGREE UPON AN ARBITRATOR OR IF THEY ARE UNABLE TO DO SO, THE MOVING PARTY SHALL REQUEST A PANEL OF CERTIFIED ARBITRATORS FROM THE FEDERAL MEDIATION AND CONCILIATION SERVICE OR THE ILLINOIS DEPARTMENT OF LABOR-DIVISION OF CONCILIATION. THE PARTY STRIKING THE FIRST NAME WILL BE DECIDED BY A TOSS OF A COIN.

THE PARTIES SHALL STRIKE ALTERNATELY, WITH EACH PARTY STRIKING THREE (3) NAMES, AND THE PERSON WHOSE NAME REMAINS SHALL BE THE ARBITRATOR.

SEC. 29.3 THE EMPLOYER AND THE UNION SHALL SHARE THE COST OF THE ARBITRATOR'S EXPENSE EQUALLY. THE DECISION OF THE ARBITRATOR SHALL BE SUBMITTED IN WRITING AND SHALL BE FINAL AND BINDING UPON THE UNION, THE EMPLOYER AND THE EMPLOYEE(S) INVOLVED. IN THE CASE OF DISCHARGE, THE ARBITRATOR SHALL HAVE THE POWER TO SUSTAIN THE DISCHARGE OR TO ORDER REINSTATEMENT OF THE EMPLOYEE, WITHOUT OR WITH A MAKE WHOLE REMEDY. THE JURISDICTION AND AUTHORITY OF THE ARBITRATOR AND HIS OPINION AND AWARD SHALL BE CONFINED EXCLUSIVELY TO THE INTERPRETATION OF THE EXPLICIT PROVISION OR PROVISIONS OF THIS AGREEMENT AT ISSUE BETWEEN THE UNION AND THE EMPLOYER.

THE ARBITRATOR SHALL HAVE NO AUTHORITY TO ADD TO, DETRACT FROM, ALTER, AMEND OR MODIFY ANY PROVISIONS OF THIS AGREEMENT OR IMPOSE ON ANY PARTY HERETO A LIMITATION OR OBLIGATION NOT EXPLICITLY PROVIDED FOR IN THIS AGREEMENT, OR TO ALTER ANY WAGE RATE OR WAGE STRUCTURE. THE ARBITRATOR'S DECISION SHALL BE RENDERED NOT LATER THAN THIRTY (30) CALENDAR DAYS FROM THE DATE OF THE COMPLETION OF THE ARBITRATION HEARING, OR THIRTY (30) DAYS FROM THE DATE BRIEFS ARE REQUIRED, UNLESS EXTENDED BY THE PARTIES.

SEC. 29.4 THE PARTIES AGREE TO FOLLOW EACH OF THE STEPS OUTLINED IN THIS ARTICLE IN THE PROCESSING OF A GRIEVANCE. IF, IN ANY STEP, THE EMPLOYER'S REPRESENTATIVE FAILS TO GIVE HIS ANSWER WITHIN THE TIME LIMITS SET FORTH HEREIN, THEN THE GRIEVANCE SHALL BE AUTOMATICALLY ADVANCED TO THE NEXT STEP IN THE GRIEVANCE PROCEDURE AT THE EXPIRATION OF SUCH TIME LIMIT. ANY STEPS IN THE GRIEVANCE PROCEDURE AND ANY TIME LIMITS ESTABLISHED FOR THE PROCESSING OF GRIEVANCES MAY BE WAIVED OR EXTENDED BY THE MUTUAL AGREEMENT OF THE EMPLOYER AND THE UNION.

SEC. 29.5 IN THE EVENT THE EMPLOYER IS DELINQUENT IN THE PAYMENT OF WAGES OR THE REMITTANCE OF CHECKED-OFF DUES DUE TO THE UNION OR OF CONTRIBUTIONS UNDER THE HEALTH AND WELFARE OR PENSION FUNDS AND THEREAFTER FAILS OR REFUSES TO CORRECT OR REMEDY THE SAID DELINQUENCY WITHIN TEN (10) CALENDAR DAYS AFTER THE UNION NOTIFIES THE EMPLOYER BY CERTIFIED MAIL PROTESTING THE SAID VIOLATIONS, THEN THE GRIEVANCE PROCEDURE HEREINABOVE SET FORTH SHALL HAVE NO APPLICATION TO SUCH CIRCUMSTANCES AND THE UNION SHALL BE PERMITTED ALL LEGAL AND ECONOMIC RECOURSE AGAINST THE EMPLOYER, INCLUDING THE RIGHT TO STRIKE AND PICKET UNTIL SUCH VIOLATIONS ARE CORRECTED, NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT. A DELINQUENT EMPLOYER SHALL BE LIABLE DIRECTLY TO THE SAID EMPLOYEES FOR ALL BENEFITS SAID EMPLOYEES SHOULD HAVE OTHERWISE RECEIVED FROM HEALTH AND WELFARE FUND OR PENSION FUND WERE IT NOT FOR THE EMPLOYER'S DELINQUENCY, INCLUDING COSTS AND REASONABLE ATTORNEY FEES TO ENFORCE PAYMENT THEREOF.

SEC. 29.6 FOR THE DURATION OF THIS AGREEMENT WITH REGARD TO ANY MATTER WITHIN THE SCOPE OF SECTION 29.1 OF THIS ARTICLE, THERE SHALL BE NO LOCKOUT OR STRIKE, EXCEPT AS PROVIDED IN SECTION 29.5 OF THIS ARTICLE, OR FOR REFUSAL TO ABIDE BY AN ARBITRATOR'S DECISION AND AWARD.

SEC. 29.7 PRIOR TO THE INTRODUCTION AND IMPLEMENTATION OF EMPLOYER WORK RULES, THE EMPLOYER SHALL SUBMIT THE WORK RULES TO THE LOCAL UNION FOR FULL REVIEW PRIOR TO CIRCULATION.

IN THE EVENT OF ANY MODIFICATIONS TO EXISTING WORK RULES, THE EMPLOYER SHALL NOTIFY THE UNION PRIOR TO THE EFFECTIVE DATE OF SUCH CHANGES AND THE EMPLOYEES WILL BE LIKEWISE ADVISED BEFORE THE REVISIONS BECOME EFFECTIVE.

SEC. 29.8 *DISCIPLINE AND DISCHARGE:*

A. NO REGULAR EMPLOYEE, AFTER HAVING COMPLETED HIS PROBATIONARY PERIOD, SHALL BE DISCHARGED, SUSPENDED WITHOUT PAY OR SUBJECTED TO OTHER DISCIPLINARY ACTION WITHOUT JUST CAUSE. PROBATIONARY EMPLOYEES MAY BE DISCHARGED OR DISCIPLINED, WITHOUT RECOURSE TO ARTICLE 29.

B. EMPLOYEES ARE SUBJECT TO IMMEDIATE DISCHARGE FOR ENGAGING IN SERIOUS MISCONDUCT, REGARDLESS OF WHETHER THE EMPLOYEE HAS RECEIVED ANY PRIOR DISCIPLINE OR CORRECTIVE ACTION. SERIOUS MISCONDUCT, INCLUDES, BUT IS NOT LIMITED TO, DISHONESTY, ENGAGING IN VIOLENT ACTIONS, INSUBORDINATION, GROSS NEGLIGENCE IN THE PERFORMANCE OF JOB DUTIES, THE POSSESSION OF PERSONAL WEAPONS OR EXPLOSIVES, THE POSSESSION, CONSUMPTION, USE OR DISTRIBUTION OF ALCOHOL OR CONTROLLED SUBSTANCES ON THE EMPLOYER'S PREMISES OR WHILE ON DUTY, TESTING POSITIVE FOR DRUGS OR ALCOHOL PURSUANT TO THE EMPLOYER'S GENERAL POLICY AGAINST DRUGS AND ALCOHOL AND WILLFUL VIOLATION OF THE EMPLOYER'S RULES OF CONDUCT OR OTHER POLICIES AND PROCEDURES.

C. BEFORE DISCHARGING AN EMPLOYEE, EXCEPT AS PROVIDED IN PARAGRAPH 2 ABOVE, THE EMPLOYER SHALL ISSUES ONE (1) VERBAL WARNING NOTICE AND TWO (2) WRITING WARNING NOTICES. FOLLOWING THE SECOND WRITTEN NOTICE FOR THE SAME OR SIMILAR OFFENSE WITHIN INDIVIDUAL EMPLOYER POLICY, THE EMPLOYEE MAY BE DISCIPLINARY LAID-OFF FOR NOT MORE THAN FIVE (5) WORKING DAYS, OR DISCHARGED.

D. WARNING NOTICES SHALL BE REMOVED FROM AN EMPLOYEE'S FILE EIGHTEEN (18) MONTHS FROM THE DATE OF ISSUANCE. ALL CURRENT WARNING NOTICES SHALL BE REMOVED AFTER EIGHTEEN (18) MONTHS.

E. WHEN A REGULAR EMPLOYEE IS DISCIPLINED OR DISCHARGED, THE REASONS FOR THAT ACTION SHALL BE GIVEN TO THE EMPLOYEE IN WRITING. WHEN AN EMPLOYEE IS DISCHARGED OR DISCIPLINED, COPIES OF THE WRITTEN DISCHARGED OR DISCIPLINARY NOTICE SHALL BE SENT TO THE OFFICE OF THE UNION WITHIN SEVENTY-TWO (72) HOURS OF THE DISCHARGE. AN EMPLOYEE WHO IS GIVEN A WRITTEN COUNSELING OR WARNING SHALL BE REQUIRED TO SIGN THAT DOCUMENT FOR PURPOSES OF ACKNOWLEDGING RECEIPT, ALTHOUGH BY SIGNING THE WRITTEN COUNSELING OR WARNING, THE EMPLOYEE SHALL NOT BE DEEMED TO BE AGREEING WITH THE CONTENTS OF THE WRITTEN COUNSELING OR WARNING.

F. IN ANY DISCIPLINE OR DISCHARGE CASE, EVIDENCE OF COMPARATIVE TREATMENT OF EMPLOYEES MAY NOT BE USED TO CONTEST THE PROPRIETY OF THE DISCIPLINE OR DISCHARGE, UNLESS THE UNION DEMONSTRATES THAT A DIFFERENT OR NO DISCIPLINE WAS IMPOSED UPON ANOTHER EMPLOYEE UNDER CIRCUMSTANCES THAT ARE SUBSTANTIALLY THE SAME AS INVOLVED IN THE CASE AT ISSUE.

G. IN ANY DISCIPLINE OR DISCHARGE CASE, EVIDENCE OF ALLEGED VIOLATION OF PRIOR INFRACTIONS BY THE EMPLOYEE MAY NOT BE USED TO CONTEST THE PROPRIETY OF ANY DISCIPLINE OR DISCHARGE, SO LONG AS THE EMPLOYER HAD, PRIOR TO THE IMPOSITION OF THE DISCIPLINE OR DISCHARGE, SPECIFICALLY ADVISED THE EMPLOYEE IN WRITING THAT THE INVOLVED CONDUCT WOULD NO LONGER BE TOLERATED AND THAT ANY REPETITION OF THE CONDUCT COULD RESULT IN DISCIPLINARY ACTION OF THE TYPE AND TO THE DEGREE OF THAT WHICH WAS IMPOSED.

*EFFECTIVE MAY 1, 2006*, A COMMISSION ROUTE SALES REPRESENTATIVE WHOSE KEY PERFORMANCE INDICATOR ("KPI") SCORE IS BELOW FIFTY (50) SHALL BE SUBJECT TO APPROPRIATE DISCIPLINARY ACTION.

THE EMPLOYER AGREES NOT TO DISCIPLINE EMPLOYEES FOR A PERIOD OF SIX (6) MONTHS FOLLOWING IMPLEMENTATION OF THE NEW WAGE/KPI RANGES.

*EFFECTIVE MAY 1, 2007,* A COMMISSION ROUTE SALES REPRESENTATIVE WHOSE KPI SCORE IS BELOW FIFTY-FIVE (55) SHALL BE SUBJECT TO APPROPRIATE DISCIPLINARY ACTION.

*EFFECTIVE MAY 1, 2008*, A COMMISSION ROUTE SALES REPRESENTATIVE WHOSE KPI SCORE IS BELOW SIXTY (60) SHALL BE SUBJECT TO APPROPRIATE DISCIPLINE. THE PROVISIONS OF THIS SECTION SHALL APPLY SO LONG AS A COMMISSION ROUTE SALES REPRESENTATIVE, UPON WHO DISCIPLINE IS IMPOSED, AND HAS BEEN PROVIDED TRAINING WITH RESPECT TO PERFORMANCE STANDARDS THAT ARE CONSIDERED IN CALCULATING THE KPI.

SEC. 29.9 *GENERAL RULES OF CONDUCT:*

TO ASSIST WITH THE EFFICIENT OPERATION OF LECHNER AND SONS AND TO INSURE THE SAFETY AND WELL BEING OF THOSE AT LECHNER AND SONS, THE FOLLOWING RULES OF CONDUCT ARE IN FORCE. THE RULES OF CONDUCT ARE NOT INTENDED TO RESTRICT THE LEGITIMATE RIGHTS AND ACTIVITIES OF EMPLOYEES, BUT RATHER ARE INTENDED TO HELP EMPLOYEES BY DEFINING AND PROTECTING THE RIGHTS AND SAFETY OF ALL PERSONS WORKING, ATTENDING OR VISITING LECHNER AND SONS. EMPLOYEES ARE EXPECTED TO ACQUAINT THEMSELVES WITH THESE RULES AS WELL AS WITH OTHER WORK RULES SPECIFIC TO THEIR DEPARTMENT. THE CONDUCT DEFINED BELOW (AND SPECIFIC DEPARTMENT WORK RULES) WILL SUBJECT EMPLOYEES TO CORRECTIVE ACTION, INCLUDING SUSPENSION OR TERMINATION, DEPENDING UPON THE SEVERITY OF THE VIOLATION. VIOLATIONS OF POLICY INCLUDE, BUT ARE NOT LIMITED TO:

A. FALSIFICATION OR UNAUTHORIZED ALTERING, DELETION OR OMISSIONS OF RECORDS, EMPLOYMENT APPLICATIONS, TIME SHEETS, TIME CARDS, WORK REPORTS, DEPARTMENTAL RECORDS, OR OTHER UNIVERSITY DOCUMENTS.

B. INTENTIONAL UNAUTHORIZED DISCLOSURE OF CONFIDENTIAL OR PRIVILEGED INFORMATION.

## ARTICLE 35 – PROTECTION OF RIGHTS

SECTION 35.1 IT SHALL NOT BE A VIOLATION OF THIS AGREEMENT AND IT SHALL NOT BE CAUSE FOR DISCHARGE OR DISCIPLINARY ACTION IN THE EVENT AN EMPLOYEE REFUSES TO ENTER UPON ANY PROPERTY INVOLVED IN A LAWFUL PRIMARY LABOR DISPUTE, OR REFUSES TO GO THROUGH OR WORK BEHIND ANY LAWFUL PRIMARY PICKET LINE OF THE UNION PARTY TO THIS AGREEMENT, INCLUDING LAWFUL PRIMARY PICKET LINES AT THE EMPLOYER'S PLACE OF BUSINESS.

SECTION 35.2 LAWFUL PRIMARY PICKETS MUST BE APPROVED AND SANCTIONED BY TEAMSTERS JOINT COUNCIL NO. 25 PRIOR TO ANY WORK STOPPAGE.

## ARTICLE 36 – EFFECTIVE DATE

SECTION 36.1 THE WAGE SCALES PROVIDED FOR IN THIS AGREEMENT SHALL BECOME EFFECTIVE MAY 1, 2006. UPON THE FIRST PAY-DAY FOLLOWING THE EXECUTION OF THIS AGREEMENT ALL MONIES HERETOFORE ACCRUING REVERTING TO MAY 1, 2006 SHALL BE PAID TO ALL EMPLOYEES COVERED BY THIS AGREEMENT.

## ARTICLE 37 – TERM OF AGREEMENT

SECTION 37.1 THIS AGREEMENT SHALL GO INTO EFFECT MAY 1, 2006 AND CONTINUE IN FULL FORCE AND EFFECT THROUGH APRIL 30, 2010. IT IS FURTHER UNDERSTOOD AND AGREED THAT ON MAY 1, 2010, THIS AGREEMENT SHALL BE AUTOMATICALLY RENEWED FOR ONE (1) YEAR FROM SUCH DATE AND THEREAFTER UPON EACH ANNIVERSARY OF SAID DATE, WITHOUT ANY FURTHER ACT OF ANY OF THE PARTIES HERETO, PROVIDED THAT EITHER PARTY MAY MODIFY OR TERMINATE THIS AGREEMENT AT MIDNIGHT APRIL 30, 2010, OR ON ANY OTHER ANNIVERSARY DATE THEREAFTER, BY GIVING SIXTY (60) DAYS PRIOR WRITTEN NOTICE TO THE OTHER SIGNATORY PARTY OF ITS INTENTION TO SO MODIFY OR TERMINATE SAME.

SEC. 37.2 IN THE EVENT PROPER NOTICE IS SERVED, NEGOTIATIONS BETWEEN THE UNION AND THE EMPLOYER SHALL COMMENCE WITHIN THIRTY (30) DAYS AFTER SUCH NOTICE HAS BEEN SERVED.

IN WITNESS WHEREOF THE PARTIES HAVE HEREUNTO SET THEIR HANDS THIS _____ DAY OF _____, 2007.


**AGREED:**


**FOR THE EMPLOYER:**                                **FOR THE UNION:**

LECHNER AND SONS                                     EXCAVATING, GRADING, ASPHALT,
420 KINGSTON DR.                                     PRIVATE SCAVENGERS, AUTOMOBILE
MT. PROSPECT, IL 60056                               SALESROOM GARAGE ATTENDANTS,
                                                     LINEN AND LAUNDRY DRIVERS
                                                     LOCAL UNION NO. 731, AFFILIATED
                                                     WITH THE INTERNATIONAL
                                                     BROTHERHOOD OF TEAMSTERS


BY: _____[signature]_____                        BY: _____[signature]_____
        Eric Lechner                                         Terrence J. Hancock, President


Title _____614_____                              BY: _____[signature]_____
                                                             John J. Lisner Secretary-Treasurer

_____

▼ **EMPLOYER CONTACT INFORMATION:**


_____ERIC LECHNER_____
CONTACT PERSON


_____(847) 789-3800_____
AREA CODE AND TELEPHONE NUMBER


_____(847) 789-3861_____
FACSIMILE NUMBER