

## LANER ⟍ MUCHIN℠

### Laner Muchin Dombrow Becker Levin and Tominberg, Ltd.

June 27, 2007

*Writer's Direct Dial: (312) 494-5346*

**VIA MESSENGER DELIVERY**

Mr. Robert E. Bloch
Dowd, Bloch & Bennett
8 South Michigan Avenue, 19th Floor
Chicago, Illinois 60603

     Re:    Lechner and Sons

Dear Mr. Bloch:

     Enclosed please find a fully executed copy of the collective bargaining agreement between Lechner and Sons and Teamsters Local 731. Please do not hesitate to call with any questions.

          Sincerely,

          *Mark L. Stolzenburg*

          Mark L. Stolzenburg

MLS:m

**EXHIBIT**
1

# LINEN AND INDUSTRIAL LAUNDRY AGREEMENT

by and between

## TEAMSTERS LOCAL UNION NO. 731

affiliated with the

## INTERNATIONAL BROTHERHOOD OF TEAMSTERS

and

## LECHNER AND SONS



effective

May 1, 2006 through April 30, 2010

# TABLE OF CONTENTS

**ARTICLE**                                                                 **PAGE**

1    DEFINITIONS ........................................................................ 1
2    SIGNERS OF AGREEMENT ................................................ 2
3    UNION RECOGNITION, SECURITY AND CHECK-OFF ............. 2
4    UNION AND OFFICERS LIABILITY .................................... 3
5    DISCHARGE, SUSPENSION AND WARNING NOTICES........... 4
6    MEDICAL LEAVE ................................................................ 5
7    OTHER AGREEMENTS ........................................................ 6
8    WAGE SCALES-TIME RECORD ........................................... 6
9    ROUTE SPLITS .................................................................. 11
10   FIVE-DAY WEEK ............................................................... 11
11   HOLIDAYS AND SUNDAY .................................................. 12
12   REGULATIONS AS TO C.O.D. BUSINESS ............................ 12
13   PAY DAYS-FAILURE TO PAY AT TIME OF DISMISSAL
     SETTLEMENT FOR OUTSTANDING ACCOUNTS ................... 13
14   RESPONSIBILITY OF EMPLOYEE DUE TO ROBBERIES
     AND THEFTS ................................................................... 13
15   EMPLOYEES AUTHORIZED EXPENSES ............................... 13
16   UNIFORMS ....................................................................... 13
17   SICK DAYS ....................................................................... 13
18   VACATIONS ...................................................................... 13
19   SALES AND TRANSFERS ................................................... 15
20   CHECKING RECORDS ........................................................ 16
21   EQUIPMENT INSPECTION/TRUCK MAINTENANCE ............. 16
22   RESPONSIBILITY OF EMPLOYEES PERTAINING TO CITY
     AND STATE ORDINANCES ................................................. 17
23   LAVATORIES .................................................................... 18
24   FUNERAL LEAVE .............................................................. 18
25   HEALTH AND WELFARE .................................................... 18
26   PENSION FUND ................................................................ 21
27   SEPARABILITY AND SAVINGS CLAUSE .............................. 23
28   NON-DISCRIMINATION ..................................................... 23
29   GRIEVANCE AND ARBITRATION PROCEDURES ................... 23
30   EMPLOYEE'S BOND .......................................................... 28
31   BULLETIN BOARD ACCESS ............................................... 29
32   D.R.I.V.E. AUTHORIZATION AND DEDUCTION ................... 29
33   MILITARY LEAVE ............................................................. 29
34   UNIFORM DRUG POLICY ................................................... 29
35   PROTECTION OF RIGHTS .................................................. 30
36   EFFECTIVE DATE ............................................................. 30
37   TERM OF AGREEMENT ...................................................... 30

# LINEN AND INDUSTRIAL LAUNDRY AGREEMENT

THIS AGREEMENT MADE EFFECTIVE THIS FIRST DAY OF MAY 1, 2006 BY AND BETWEEN LECHNER AND SONS, (HEREINAFTER REFERRED TO AS "EMPLOYER") AND EXCAVATING, GRADING, ASPHALT, PRIVATE SCAVENGERS, SALESROOM GARAGE ATTENDANTS AND LINEN AND LAUNDRY DRIVERS, LOCAL UNION NO. 731, AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS (HEREINAFTER REFERRED TO AS "UNION"), ACTING AS THE SOLE AND EXCLUSIVE BARGAINING AGENT FOR ITS MEMBERS.

### WHEREAS

IT IS THE INTENT AND PURPOSE OF THIS AGREEMENT TO PROMOTE AND IMPROVE INDUSTRIAL RELATIONS BETWEEN THE EMPLOYER AND ITS EMPLOYEES; AID TOWARD THE ECONOMICAL AND PROFITABLE OPERATION OF THE BUSINESS; MAKE REASONABLE PROVISIONS FOR THE SAFETY AND HEALTH OF THE EMPLOYEES; ACCOMPLISH AND MAINTAIN THE HIGHEST EFFICIENCY AND QUALITY OF WORK PERFORMANCE; PROVIDE METHODS FOR A PROMPT AND PEACEFUL ADJUSTMENT OF GRIEVANCES; INSURE AGAINST ANY INTERRUPTION OF WORK, SLOWDOWN, OR OTHER INTERFERENCE WITH WORK PERFORMANCE; STRENGTHEN GOOD WILL, MUTUAL RESPECT, AND COOPERATION; AND SET FORTH THE AGREEMENT COVERING RATES OF PAY, HOURS OF WORK, AND OTHER CONDITIONS OF EMPLOYMENT TO BE OBSERVED BETWEEN THE PARTIES TO THIS AGREEMENT.

### ARTICLE 1 – DEFINITIONS

SECTION 1.1 WHENEVER THE WORD "EMPLOYER" IS USED HEREIN, IT SHALL REFER TO LECHNER AND SONS.

SEC. 1.2 WHENEVER THE WORD "UNION" IS USED HEREIN, IT SHALL REFER TO EXCAVATING, GRADING, ASPHALT, PRIVATE SCAVENGERS, AUTOMOBILE SALESROOM GARAGE ATTENDANTS, AND LINEN AND LAUNDRY DRIVERS, LOCAL UNION NO. 731, AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AND ALL ITS MEMBERS, INDIVIDUALLY AND COLLECTIVELY BOUND HEREUNDER AFFECTED BY THIS AGREEMENT.

SEC. 1.3   WHENEVER THE WORD "EMPLOYEE" OR "EMPLOYEES" IS USED HEREIN, IT SHALL REFER TO THE EMPLOYEE OR EMPLOYEES IN THE CLASSIFICATIONS OF WORK COVERED BY THIS AGREEMENT.

## ARTICLE 2 – SIGNERS OF AGREEMENT

SECTION 2.1 UPON THE EXECUTION OF THIS AGREEMENT BY THE PROPER OFFICIALS OF THE EMPLOYER AND THE PROPER OFFICERS OF THE UNION, THIS CONTRACT SHALL BE BINDING ON THE RESPECTIVE PARTIES AND ALL EMPLOYEES PERFORMING BARGAINING UNIT WORK.

## ARTICLE 3 – UNION RECOGNITION, SECURITY AND CHECK-OFF

SECTION 3.1 THE EMPLOYER RECOGNIZES THE UNION AS THE SOLE AND EXCLUSIVE BARGAINING REPRESENTATIVE FOR ROUTE SALESMEN HEREINAFTER REFERRED TO AS "EMPLOYEES", WITHIN THE JURISDICTION OF THE UNION.

SEC. 3.2  ALL PRESENT EMPLOYEES WHO ARE MEMBERS OF THE UNION ON THE EFFECTIVE DATE OF THIS SUBSECTION OR ON THE DATE OF EXECUTION OF THIS AGREEMENT, WHICHEVER IS THE LATER, SHALL REMAIN MEMBERS IN GOOD STANDING OF THE UNION TO THE MAXIMUM EXTENT PERMITTED BY LAW AS A CONDITION OF EMPLOYMENT. ALL PRESENT EMPLOYEES WHO ARE NOT MEMBERS OF THE UNION AND WHO PERFORM BARGAINING UNIT WORK AND ALL EMPLOYEES WHO ARE HIRED HEREAFTER TO PERFORM BARGAINING UNIT WORK SHALL BECOME AND REMAIN MEMBERS IN GOOD STANDING OF THE UNION TO THE MAXIMUM EXTENT PERMITTED BY LAW AS A CONDITION OF CONTINUED EMPLOYMENT ON AND AFTER THE 31ST DAY FOLLOWING THE BEGINNING OF THEIR EMPLOYMENT, OR ON AND AFTER THE 31ST DAY FOLLOWING THE EFFECTIVE DATE OF THIS SECTION OR THE EXECUTION DATE OF THIS AGREEMENT, WHICHEVER IS THE LATER. THIS PROVISION SHALL BE MADE AND BECOME EFFECTIVE AS OF SUCH TIME AS IT MAY BE MADE AND BECOME EFFECTIVE UNDER THE PROVISIONS OF THE NATIONAL LABOR RELATIONS ACT, BUT NOT RETROACTIVELY. ANY EMPLOYEE WHO HAS FAILED TO ACQUIRE OR THEREAFTER MAINTAIN MEMBERSHIP IN THE UNION TO THE EXTENT OF PAYMENT OF THE DUES, INITIATION FEES, AND/OR ASSESSMENTS UNIFORMLY REQUIRED BY THE UNION AS A CONDITION OF ACQUIRING OR MAINTAINING MEMBERSHIP IN THE UNION SHALL BE TERMINATED SEVENTY-TWO (72) HOURS AFTER THE EMPLOYER HAS RECEIVED WRITTEN NOTICE CERTIFYING THAT MEMBERSHIP HAS BEEN AND IS CONTINUING TO BE OFFERED TO SAID EMPLOYEE ON THE SAME BASIS AS ALL OTHER EMPLOYEES, AND THAT SAID EMPLOYEE HAS HAD WRITTEN NOTICE AND OPPORTUNITY TO MAKE PAYMENT OF ALL DUES, INITIATION FEE, ASSESSMENTS, REINITIATION OR REINSTATEMENT FEES.

SEC. 3.3 THE EMPLOYER SHALL DEDUCT FROM THE PAY OF ALL EMPLOYEES ALL DUES AND INITIATION FEES WHICH HAVE BEEN AUTHORIZED IN WRITING BY THE MEMBER EMPLOYEE CONCERNED. THE UNION SHALL FURNISH THE EMPLOYER WITH SIGNED INDIVIDUAL CHECK-OFF AUTHORIZATION CARDS WHICH GIVE THE EMPLOYER THE AUTHORITY TO MAKE SUCH PAYROLL DEDUCTIONS. MONIES SO COLLECTED SHALL BE REMITTED TO THE UNION NOT LATER THAN THE TWENTIETH (20TH) DAY OF THE CURRENT MONTH.

A REFUSAL BY THE EMPLOYER TO SO REMIT TO THE UNION THOSE INITIATION FEES AND DUES WHICH HAVE ALREADY BEEN DEDUCTED IN ACCORDANCE WITH THIS ARTICLE BY THE EMPLOYER SHALL CONSTITUTE A BREACH OF THIS CONTRACT, AND THE UNION SHALL GIVE THE EMPLOYER TEN (10) DAYS' NOTICE, IN WRITING, BY CERTIFIED MAIL, OF SUCH DELINQUENCY.  WITHOUT FURTHER NOTICE THE UNION SHALL HAVE THE RIGHT TO STRIKE OR TAKE SUCH ACTIONS AS IT SHALL DEEM NECESSARY.

THE UNION SHALL INDEMNIFY THE EMPLOYER AND HOLD IT HARMLESS AGAINST ANY AND ALL CLAIMS, DEMANDS, SUITS OR OTHER FORMS OF LIABILITY THAT SHALL ARISE OUT OF, OR BY REASON OF, ANY ACTION TAKEN OR NOT TAKEN BY THE EMPLOYER FOR THE PURPOSE OF COMPLYING WITH THE PROVISIONS OF THIS SECTION 3 OR IN RELIANCE ON ANY NOTICE GIVEN BY THE UNION TO THE EMPLOYER WITH RESPECT TO THE EMPLOYEE'S MEMBERSHIP STATUS IN THE UNION.

SEC. 3.4  THE EMPLOYER WILL BARGAIN WITH NO OTHER UNION WITH RESPECT TO THIS BARGAINING UNIT DURING THE TERM OF THIS AGREEMENT AND FURTHER AGREES NOT TO ENTER INTO ANY OTHER AGREEMENTS OR CONTRACTS WITH ITS EMPLOYEES, INDIVIDUALLY OR COLLECTIVELY, WHICH IN ANY WAY CONFLICTS WITH THE TERMS AND PROVISIONS OF THIS AGREEMENT.

## ARTICLE 4 – UNION AND OFFICERS LIABILITY

SECTION 4.1 IT IS AGREED THAT IN ALL CASES OF AN UNAUTHORIZED STRIKE, SLOW-DOWN, WALK-OUT OR ANY UNAUTHORIZED CESSATION OF WORK, THE UNION AND ITS OFFICERS, AS OFFICERS AND/OR INDIVIDUALLY, SHALL NOT BE LIABLE FOR DAMAGES RESULTING FROM SUCH UNAUTHORIZED ACTS OF ITS MEMBERS.

SEC. 4.2  IT IS FURTHER AGREED THAT IN NO EVENT SHALL THE UNION'S OFFICERS AS OFFICERS, AND/OR INDIVIDUALLY, BE LIABLE FOR ANY STRIKE, BREACH OR DEFAULT IN VIOLATION OF THIS AGREEMENT.

SEC. 4.3 IT IS FURTHER AGREED AND UNDERSTOOD THAT THE UNION SHALL NOT BE LIABLE FOR ANY STRIKE, BREACH OR DEFAULT IN VIOLATION OF THIS AGREEMENT, UNLESS THE ACT IS EXPRESSLY AUTHORIZED BY ITS EXECUTIVE BOARD.   A PROPERLY DESIGNATED OFFICER OF THE UNION SHALL WITHIN TWENTY-FOUR (24) HOURS AFTER REQUEST IS MADE TO THE PRESIDENT OF THE UNION, DECLARE AND ADVISE THE PARTY MAKING SUCH REQUEST BY FAX OR CERTIFIED MAIL, WHETHER THE UNION SHALL MAKE IMMEDIATE EFFORT TO TERMINATE ANY STRIKE OR STOPPAGE OF WORK WHICH IS NOT AUTHORIZED BY IT WITHOUT ASSUMING LIABILITY THEREFORE.

SEC. 4.4  IN THE EVENT OF ANY CONCERTED UNAUTHORIZED STRIKE, SLOW-DOWN, WALK-OUT OR ANY UNAUTHORIZED CESSATION OF WORK, THE EMPLOYER, DURING THE FIRST TWENTY-FOUR (24) HOUR PERIOD OF SUCH UNAUTHORIZED WORK STOPPAGE, SHALL HAVE THE RIGHT OF REASONABLE DISCIPLINE SHORT OF DISCHARGE, AND AFTER THE FIRST TWENTY-FOUR (24) HOUR PERIOD OF SUCH UNAUTHORIZED STOPPAGE, AND IF SAID UNAUTHORIZED STOPPAGE CONTINUES, HOWEVER, THE EMPLOYER SHALL HAVE THE RIGHT WITHIN ITS DISCRETION IMMEDIATELY TO DISCHARGE ANY EMPLOYEE COVERED BY THIS AGREEMENT PARTICIPATING IN SUCH UNAUTHORIZED ACTIVITY.

SEC. 4.5  IT IS FURTHER STIPULATED AND AGREED BY AND BETWEEN THE PARTIES TO THIS AGREEMENT, THAT BY THE ACT OF THE INTERNATIONAL UNION APPROVING THIS CONTRACT AS TO FORM AND SUBSTANCE, THE SAID INTERNATIONAL UNION, ITS OFFICERS OR AGENTS SHALL NOT IN ANY MANNER BECOME A PARTY TO THIS AGREEMENT, NOR IS THERE ANY DUTY OR OBLIGATION IMPOSED UPON THE INTERNATIONAL UNION, ITS OFFICERS OR AGENTS RESPECTING THE TERMS AND CONDITIONS OF THIS AGREEMENT IN ANY MANNER WHATSOEVER.

SEC. 4.6  IT IS FURTHER STIPULATED AND AGREED THAT THE APPROVAL AS TO FORM AND SUBSTANCE IS FOR THE PURPOSE OF INDICATING ONLY THAT THE INTERNATIONAL UNION CERTIFIES THAT THE SAID CONTRACT IS NOT IN VIOLATION OF THE INTERNATIONAL CONSTITUTION AND BY-LAWS AND NOT FOR OTHER PURPOSES.

## ARTICLE 5 – DISCHARGE / SUSPENSION AND WARNING NOTICES

SECTION 5.1  NO EMPLOYEE SHALL BE SUSPENDED WITHOUT PAY, DISCHARGED OR GIVEN A WRITTEN WARNING WITHOUT JUST CAUSE.   THE EMPLOYER SHALL PROMPTLY FURNISH THE EMPLOYEE AND THE UNION WITH A STATEMENT, IN WRITING, SETTING FORTH THE REASON FOR THE ACTION TAKEN. ANY DISCIPLINARY ACTION TAKEN MAY BE THE SUBJECT OF A GRIEVANCE AND OF ARBITRATION.  NO EMPLOYEE SHALL BE SUSPENDED WITHOUT PAY, UNLESS AT LEAST TWO (2) WARNING NOTICES HAVE BEEN ISSUED IN WRITING TO THE EMPLOYEE, WITH A COPY TO THE UNION.

WARNING NOTICES SHALL EXPIRE AFTER TWELVE (12) MONTHS; HOWEVER, THEY SHALL REMAIN IN EMPLOYEE'S FILE AS DOCUMENTATION TO HIS PERMANENT RECORD.

ANY AND ALL DISCIPLINARY ACTION SHALL BE SUBJECT TO THE GRIEVANCE PROCEDURE AS DEFINED AND IN ACCORDANCE WITH THE GRIEVANCE PROCEDURE AS STATED IN ARTICLE 29 OF THE AGREEMENT.

SEC. 5.2 NO WARNING NOTICES SHALL BE DEEMED NECESSARY IF THE DISCHARGE IS FOR THE FOLLOWING REASONS:

- DISHONESTY
- DRUNKENNESS
- DRINKING ALCOHOLIC BEVERAGES WHILE AT WORK
- WORKING FOR SOMEONE OTHER THAN THE EMPLOYER ON THE EMPLOYER'S TIME
- USING OR POSSESSION OF DRUGS OR NARCOTICS WHILE AT WORK
- RECKLESSNESS RESULTING IN A SERIOUS ACCIDENT WHILE ON DUTY
- FAILURE TO REPORT AN ACCIDENT TO THE EMPLOYER
- PHYSICAL ASSAULT WHILE ON DUTY OR ON THE EMPLOYER'S PREMISES

SEC. 5.3   DISCHARGE NOTICES SHALL CLEARLY INDICATE THE REASONS FOR THE DISCIPLINE AND SHALL BE DELIVERED VIA U.S. MAIL OR BY FACSIMILE TO THE UNION WITHIN TWO (2) WORKING DAYS OF THE DISCIPLINE.

SEC. 5.4   A TERMINATED EMPLOYEE SHALL RECEIVE ALL WAGES DUE ON THE NEXT REGULAR PAY DAY AND COMMISSIONS WHEN DUE, AND ON REQUEST, A STATEMENT IN REFERENCE TO HIS CHARACTER AND SERVICES.

## ARTICLE 6 – MEDICAL LEAVE

SECTION 6.1   WHEN AN EMPLOYEE IS ABSENT DUE TO A NON-OCCUPATIONAL SICKNESS, INJURY OR DISABILITY AND CANNOT CARRY ON HIS DUTIES FOR A PERIOD LONGER THAN SIX MONTHS, SAID EMPLOYEE SHALL BE CONSIDERED DISCHARGED AFTER SAID SIX MONTH PERIOD WHEN THE EMPLOYER GIVES HIM WRITTEN DISCHARGE NOTICE THAT HIS SERVICES ARE NO LONGER REQUIRED.   WHEN AN EMPLOYEE IS ABSENT DUE TO AN OCCUPATIONAL SICKNESS, INJURY OR DISABILITY AND CANNOT CARRY ON HIS DUTIES FOR A PERIOD LONGER THAN TWELVE MONTHS, SAID EMPLOYEE SHALL BE CONSIDERED DISCHARGED AFTER SAID TWELVE MONTH PERIOD WHEN THE EMPLOYER GIVES HIM WRITTEN DISCHARGE NOTICE THAT HIS SERVICES ARE NO LONGER REQUIRED.   ANY EMPLOYEE RETURNING TO WORK WITHIN THE DESIGNATED PERIOD SHALL NOT LOSE HIS SENIORITY RIGHTS; HOWEVER, BEFORE SAID EMPLOYEE ASSUMES HIS DUTIES, HE MUST FURNISH HIS EMPLOYER WITH A DOCTOR'S CERTIFICATE CERTIFYING THAT HE HAS RECEIVED A PHYSICAL EXAMINATION AND THAT HE IS IN PROPER PHYSICAL CONDITION TO OPERATE HIS ROUTE AND PERFORM SUCH OTHER DUTIES ASSOCIATED THEREWITH.

SEC. 6.2   A COPY OF THE WRITTEN DISCHARGE NOTICE PROVIDED ABOVE SHALL BE DELIVERED OR MAILED TO THE UNION WITHIN TWO (2) WORKING DAYS AFTER SAID NOTICE HAS BEEN GIVEN TO THE EMPLOYEE.

SEC. 6.3 AN EMPLOYEE ABSENT UNDER THE PROVISIONS OF THIS ARTICLE SHALL ACCRUE VACATION CREDIT FOR UP TO THE FIRST THREE MONTHS OF SUCH ABSENCE, UNLESS THE ABSENCE IS DUE TO AN OCCUPATIONAL SICKNESS, INJURY OR DISABILITY, IN WHICH CASE HE SHALL ACCRUE VACATION CREDIT FOR UP TO SIX MONTHS OF SUCH ABSENCE.

SEC. 6.4 WHERE APPLICABLE, VACATION PAY UNDER THIS SECTION SHALL BE PRORATED AS PROVIDED IN THE VACATIONS ARTICLE.

SEC. 6.5 EMPLOYEES COVERED UNDER THE PROVISIONS OF THIS CONTRACT SHALL BE REQUIRED TO REPORT TO WORK WHEN THEY ARE RELEASED FOR LIGHT DUTY AFTER INCURRING A COMPENSABLE INJURY. SUCH EMPLOYEES SHALL BE REQUIRED TO PERFORM DUTIES WITHIN SCOPE OF THE PHYSICAL LIMITATIONS PRESCRIBED. SUCH EMPLOYEES SHALL BE COMPENSATED AT THE RATE OF $7.00 PER HOUR; HOWEVER, ANY DIFFERENCE BETWEEN THIS RATE AND THE RATE WHICH THEY WOULD HAVE EARNED ON WORKMEN'S COMPENSATION SHALL BE MADE UP BY THE EMPLOYERS WORKMEN'S COMPENSATION CARRIER, ACCORDING TO THE APPLICABLE ILLINOIS WORKMEN'S COMPENSATION STATUTES.

## ARTICLE 7 – OTHER AGREEMENTS

SECTION 7.1    THE EMPLOYER AGREES NOT TO ENTER INTO ANY INDIVIDUAL AGREEMENTS OR CONTRACTS WITH THE EMPLOYEE WHICH CONTAIN ANY TERMS CONTRARY TO ANY OF THE PROVISIONS HEREOF; AND THE EMPLOYER FURTHER AGREES THAT ANY SUCH INDIVIDUAL AGREEMENTS OR CONTRACTS NOW EXISTING SHALL BECOME NULL AND VOID ON THE SIGNING OF THIS CONTRACT.

## ARTICLE 8 – WAGE SCALES / TIME RECORD

SECTION 8.1 *JOB DESCRIPTIONS:*

*COMMISSION ROUTE SALES REPRESENTATIVE.* A COMMISSION ROUTE SALES REPRESENTATIVE IS AN EMPLOYEE WHO IS PAID ON A COMMISSION BASIS WHO SELLS AND SOLICITS NEW BUSINESS, AND RETAINS AND EXPANDS EXISTING BUSINESS IN WEARING APPAREL, WIPING TOWELS, DUST CONTROL, WALK-OFF MATS AND OTHER PRODUCTS OR SERVICES PROVIDED BY THE EMPLOYER.

COMMISSION ROUTE SALES REPRESENTATIVES ARE THE EMPLOYER'S PRIMARY CONTACT WITH ITS CUSTOMERS, BOTH PRESENT AND PROSPECTIVE. CONSEQUENTLY, THE ESSENTIAL ELEMENT IN THEIR EMPLOYMENT IS THE SALES FUNCTION. THE EMPLOYER COMPENSATES COMMISSION ROUTE SALES REPRESENTATIVES ON A COMMISSION BASIS AND REQUIRES ITS COMMISSION ROUTE SALES REPRESENTATIVES TO SELL NEW BUSINESS, FOR WHICH THEY ARE PAID A NEW BUSINESS COMMISSION, AND TO RETAIN AND EXPAND EXISTING BUSINESS. IN THIS MANNER, COMMISSION ROUTE SALES REPRESENTATIVES' EARNINGS AND SALES EFFORTS ARE DIRECTLY RELATED TO ONE ANOTHER. ALL THE COMMISSION ROUTE SALES REPRESENTATIVES' SALES ACTIVITIES ARE CONDUCTED AWAY FROM THE EMPLOYER'S PLACE OF BUSINESS.

COMMISSION ROUTE SALES REPRESENTATIVES ARE REQUIRED TO DO WORK INCIDENTAL TO THEIR SALES ACTIVITIES, BUT WHICH IS NECESSARY TO THE SUCCESSFUL ACCOMPLISHMENT OF THEIR MAIN FUNCTION: THUS, THEY MAKE DELIVERIES, COLLECT MONIES, KEEP RECORDS, AND DO SUCH OTHER TASKS AS APPROPRIATE. TYPICALLY, THEY CARRY AN ASSORTMENT OF THE ITEMS THEY SELL, CALL ON THEIR ROUTE'S CUSTOMERS AT FREQUENT AND REGULAR INTERVALS,

CONFER WITH THE CUSTOMERS AS THE REPLENISHMENT OR CHANGE IN THE CUSTOMERS STOCK OF LAUNDERED AND CLEAN GOODS, CONFER, FURTHER, AS TO THE USE BY THE CUSTOMER OF OTHER SERVICES OFFERED BY THE EMPLOYER, AND WHERE THE COMMISSION ROUTE SALES REPRESENTATIVES ARE INTRODUCING NEW ITEMS OR SERVICES, THEY ATTEMPT TO SELL THE CUSTOMERS SUCH NEW ITEMS OR SERVICES. ALSO, COMMISSION ROUTE SALES REPRESENTATIVES REMOVE SOILED AND USED GOODS WHICH ARE TO BE RETURNED AND SORTED TO THE EMPLOYER FOR LAUNDERING OR OTHER PROCESSING.

A COMMISSION ROUTE SALES REPRESENTATIVES IS EXPECTED TO MAINTAIN A REASONABLE LEVEL OF NEW SALES ON A WEEKLY BASIS AND DEMONSTRATE BOTH A WILLINGNESS TO SELL AND CONSISTENTLY HIGH LEVEL OF PERSONAL EFFORT TO SELL.

SEC. 8.2 *NON-COMMISSION ROUTE SALES REPRESENTATIVE:* A NON-COMMISSION ROUTE SALES REPRESENTATIVE IS AN EMPLOYEE WHO IS PAID BY THE HOUR WHO SOLICITS NEW BUSINESS, RETAINS AND EXPANDS EXISTING BUSINESS IN WEARING APPAREL, WHIPPING TOWELS, DUST CONTROL, WALK-OFF MATS AND OTHER PRODUCTS OR SERVICES, AND RUNS VACATION RELIEF OR SPECIALS. A NON-COMMISSION ROUTE SALES REPRESENTATIVE IS EXPECTED TO MAINTAIN A REASONABLE LEVEL OF NEW SALES ON A WEEKLY BASIS AND DEMONSTRATE BOTH A WILLINGNESS TO SELL AND A CONSISTENTLY HIGH LEVEL OF PERSONAL EFFORT TO SELL.

SEC. 8.3 *ROUTE VOLUME PERCENTAGE COMMISSION:* THE COMMISSION PERCENTAGE FOR ROUTE VOLUME OF DELIVERED ITEMS SHALL BE DETERMINED FOR EACH QUARTER DURING THE TERM OF THIS AGREEMENT BASED UPON THE PARTICULAR FACILITY ROUTE SALES REPRESENTATIVE'S PERFORMANCE WITH RESPECT TO CERTAIN KEY PERFORMANCE INDICATOR ("KPI") FACTORS AS SET FORTH BELOW:

THE PARTIES HEREBY AGREE THAT THE BASE RATE OR MINIMUM SHALL BE $734.00 PER WEEK.

### KPI RANGES

| KPI Factors | 1 | 2 | 3 | 4 | 5 | Multiplier | Point Total |
|---|---|---|---|---|---|---|---|
| Lost Business | >10% | 0.01-10.00% | 7.51-9.0% | 6.5-7.5% | <6.5% | 6 | |
| Delinquent Renewals (Expired or will expire with 6 months) | >20% | 16-20% | 12-16% | 8-12% | <8.0% | 5 | |
| Bulk Average Adds/Stops | <3% | $3-$6 | $6.01-$11 | $11.01-$15 | >15 | 4 | |
| Catalog Direct | <$200 | $200-$250 | $250-$325 | $325-$425 | >$425 | 3 | |
| A/R 80 & 90% | >7% | 0.01-7% | 5.01-8% | 4.01-5% | <4.0% | 2 | |
| Total Point Possible | | | | | | 20 | |

THE QUARTERLY ROUTE VOLUME OF DELIVERED ITEMS PERCENTAGE FOR A PARTICULAR FACILITY ROUTE SALES REPRESENTATIVES SHALL BE BASED UPON THE FACILITY ROUTE SALES REPRESENTATIVE'S TOTAL KPI POINT TOTAL, AS SET FORTH BELOW:

| Point Scale | Route Volume Percentage Paid on Total Route Volume Rate |
|---|---|
| 96-100 | 11.50% |
| 91-95 | 10.50% |
| 86-90 | 10.0% |
| 81-85 | 9.50% |
| 76-80 | 9.00% |
| 71-75 | 8.50% |
| 66-70 | 8.00% |
| 61-65 | 8.00% |
| 56-60 | 8.00% |
| 51-55 | 8.00% |
| 50 and below | 8.00% |

SEC. 8.4 *CATALOG SALES COMMISSION:* FACILITY ROUTE SALES REPRESENTATIVES SHALL BE PAID A COMMISSION OF EIGHT PERCENT (8%) ON CATALOG SALES DURING THE WORKWEEK.

SEC. 8.5 *PAYMENT FOR CONTRACT RENEWALS:*

    A. FOR ANY CONTRACT RENEWAL, INCLUDING NATIONAL ACCOUNTS, RENEWED DURING A WORKWEEK, THE FACILITY ROUTE SALES REPRESENTATIVES WILL RECEIVE A PAYMENT IN THE AMOUNT EQUIVALENT TO ONE TIME (1X) THE AMOUNT OF WEEKLY VOLUME PROVIDED FOR IN THE CONTRACT.

    B. FOR CONTRACT RENEWALS WHERE THE CONTRACT IS EXTENDED FOR LESS THAN FIVE (5) YEARS, THE CONTRACT RENEWAL PAYMENT SHALL BE PAID PRO-RATA, BASED UPON THE NUMBER OF YEARS THE AGREEMENT WAS EXTENDED AS COMPARED TO FIVE (5).

SEC. 8.6 *PAYMENTS FOR SALES LEADS:* FACILITY ROUTE SALES REPRESENTATIVES WILL RECEIVE A PAYMENT FOR NEW SALES MADE DURING THE WORKWEEK BASED UPON A SALES LEAD SUBMITTED BY THE PARTICULAR FACILITY ROUTE SALES REPRESENTATIVE IN THE AMOUNT EQUIVALENT TO ONE (1X) THE WEEKLY ROUTE VOLUME RESULTING FROM THE SALE.

SEC. 8.7 *PAYMENTS FOR NEW BUSINESS:* FACILITY ROUTE SALES REPRESENTATIVES WILL RECEIVE A PAYMENT FOR NEW BUSINESS OBTAINED DIRECTLY BY THE FACILITY ROUTE SALES REPRESENTATIVE MADE DURING THE WORKWEEK IN AN AMOUNT EQUIVALENT TO ONE TIME (1X) THE WEEKLY ROUTE VOLUME RESULTING FROM THE SALE.

SEC. 8.8 *ADDITIONAL PAYMENTS:* FROM TIME TO TIME, ADDITIONAL PAYMENTS OR AWARDS MAY BE MADE TO FACILITY ROUTE SALES REPRESENTATIVES FOR PROMOTIONAL ACTIVITIES, IN THE SOLE DISCRETION OF MANAGEMENT.

COMMISSIONED INDUSTRIAL ROUTE SALES REPRESENTATIVES WORKING IN THAT JOB CLASSIFICATION AS OF JULY 1, 2006, SHALL RECEIVE PAYMENT FOR NEW SALES MADE DURING THE WORKWEEK UPON A SALES LEASE SUBMITTED BY THE PARTICULAR INDUSTRIAL ROUTE SALES REPRESENTATIVE IN AN AMOUNT EQUIVALENT TO ONE TIMES (1X) THE USUAL RECORD OF VOLUME RESULTING FROM THE SALE.

C. ANY ROUTE SALES REPRESENTATIVE OR FACILITY ROUTE SALES REPRESENTATIVE WHO WAS WORKING IN THAT JOB CLASSIFICATION AS OF JULY 1, 2006, MAY OPT AT ANY TIME TO BE COMPENSATED AS PROVIDED IN THE KPI RANGE CHART ABOVE, BEGINNING WITH THE NEXT CALENDAR QUARTER WHEN KPI'S ARE RECALCULATED. ANY SUCH EMPLOYEE WHO EXERCISES HIS/HER OPTION TO BE SO COMPENSATED MAY NOT, THEREAFTER, RETURN TO THE COMPENSATION SYSTEM WHICH WAS APPLICABLE TO HIM/HER PRIOR TO EXERCISING THE OPTION.

SEC. 8.9  *PERFORMANCE INDICATOR AVERAGES:*  EFFECTIVE JULY 1, 2007, A COMMISSION ROUTE SALES REPRESENTATIVE WHOSE "CATALOG DIRECT" KPI SCORES A RATE OF 1 OR 2, THE CSR MAY TAKE THE COMBINED AVERAGE OF THE CURRENT QUARTER PLUS THE PRECEDING QUARTER ONLY IF THE PRECEDING QUARTER'S SCORE IS 3 OR GREATER.

THE KPI INDICATOR SYSTEM SHALL BECOME EFFECTIVE JANUARY 1, 2007. DRIVERS SHALL BE PERMITTED TO VOLUNTARILY PARTICIPATE IN THE SYSTEM FOR THE REMAINDER OF THE 2006 CALENDAR YEAR. IF A DRIVER CHOOSES NOT TO PARTICIPATE IN THE KPI SYSTEM, THEY WILL BE PAID EIGHT PERCENT (8%).

*JUMPER POSITION:* CLASSIFICATION RATE OF PAY SHALL BE $18.30 PER HOUR FOR ALL HOURS WORKED. TIME AND ONE HALF (1½) SHALL BE PAID IN EXCESS OF FORTY (40) HOURS PER WEEK.

IT IS HEREBY AGREED, THAT FOR EVERY FORTY (40) WEEKS OF SCHEDULED VACATION TIME, THE EMPLOYER AGREES TO EMPLOY AN ADDITIONAL ROUTE JUMPER.

THE HOURLY RATE OF PAY SHALL BECOME EFFECTIVE UPON RATIFICATION OF THE EMPLOYER'S PROPOSAL FOR A NEW COLLECTIVE BARGAINING AGREEMENT.

*NEW HIRE RATE:* EMPLOYEES SHALL BE PAID $1.00 PER HOUR LESS THAN THE NEGOTIATED WAGE RATE OF PAY DURING THE FIRST TWELVE (12) MONTHS OF EMPLOYMENT.

SEC. 8.10 *SUNDAYS AND HOLIDAYS:*  A ROUTEMAN SHALL NOT BE PERMITTED TO WORK UNDER ANY CIRCUMSTANCES ON SUNDAY OR THE FOLLOWING LEGAL HOLIDAYS: NEW YEAR'S DAY, MEMORIAL DAY, FOURTH OF JULY, LABOR DAY, THANKSGIVING DAY, CHRISTMAS DAY AND FLOATING BIRTHDAY/PERSONAL DAY. THERE SHALL BE NO DEDUCTION IN PAY FOR EMPLOYEES WHO DO NOT WORK ON THE ABOVE MENTIONED HOLIDAYS.  IN ORDER TO QUALIFY FOR THE ABOVE HOLIDAY PAY, A ROUTEMAN MUST WORK ON THE REGULARLY SCHEDULED WORK DAY BEFORE THE HOLIDAY AND THE REGULARLY SCHEDULED WORK DAY FOLLOWING THE HOLIDAY.

SEC. 8.11 *FLOATING BIRTHDAY HOLIDAY/PERSONAL DAYS:* EFFECTIVE MAY 1, 2006 ALL BARGAINING UNIT EMPLOYEES SHALL RECEIVE ONE (1) BIRTHDAY HOLIDAY AND ONE (1) PERSONAL/SICK DAY OFF WITH PAY EACH YEAR OF THE AGREEMENT UNTIL SUCH TIME THAT THEY HAVE COMPLETED TWO (2) FULL YEARS OF EMPLOYMENT AT WHICH TIME THEY SHALL RECEIVE ONE (1) BIRTHDAY HOLIDAY AND TWO (2) PERSONAL/SICK DAYS WITH PAY, EACH REMAINING YEAR OF THE CURRENT COLLECTIVE BARGAINING AGREEMENT THROUGH ITS DURATION. SCHEDULING SHALL BE ARRANGED SO AS NOT TO CONFLICT WITH OTHER HOLIDAY WEEKS OR WITH THE VACATION SCHEDULE. SELECTION BY THE EMPLOYEE SHALL BE BASED UPON SENIORITY.

SEC. 8.12 *OTHER FORM OF PAY:*  IT IS AGREED BY BOTH PARTIES HERETO THAT NO OTHER FORM OF PAY SHALL BE PERMITTED OTHER THAN THAT CONTAINED IN THIS AGREEMENT.

SEC. 8.13 *BREAKDOWN TIME:* IN THE EVENT A ROUTE SALES REPRESENTATIVE'S DELIVERY VEHICLE BREAKS DOWN AND IS NOT REPAIRED OR REPLACED BY THE EMPLOYER WITHIN TWO (2) HOURS, THE ROUTE SALES REPRESENTATIVE SHALL BE COMPENSATED FOR ALL ADDITIONAL HOURS REQUIRED TO COMPLETE THAT DAY'S ROUTE, UNLESS THE ROUTE SALES REPRESENTATIVE IS ASSISTED BY THE EMPLOYER WITH THE COMPLETION OF THAT DAY'S ROUTE.  THE RATE OF COMPENSATION SHALL BE 1/40 THE WEEKLY GUARANTEE FOR ALL HOURS WORKED IN EXCESS OF THE PRECEDING EIGHT (8) WEEK AVERAGE FOR THAT DAY OR, THE APPLICABLE HOURLY RATE FOR ALL HOURLY PAID ROUTE SALES REPRESENTATIVE.

SEC. 8.14 *WINDSHIELD TIME:* ROUTE SALES REPRESENTATIVES TRAVELING OVER FOUR HUNDRED FIFTY (450) MILES PER WEEK SHALL BE COMPENSATED AN ADDITIONAL FLAT FIFTY DOLLARS ($50.00) IN THAT WEEK'S PAY.

SEC. 8.15 *WAGE REDUCTION:* ANY EMPLOYEE RECEIVING MORE THAN THE WAGE SCALE PROVIDED FOR IN THIS AGREEMENT SHALL SUFFER NO REDUCTION AND SHALL ALSO RECEIVE THE NEGOTIATED INCREASES IN WAGES.

## ARTICLE 9 – ROUTE SPLITS

SECTION 9.1 ROUTE SPLITS MAY ONLY OCCUR UPON RETIREMENT OF THE EMPLOYEE OR BY MUTUAL AGREEMENT BETWEEN THE EMPLOYER, THE UNION AND THE EMPLOYEE. IT IS AGREED BY THE EMPLOYER THAT WHENEVER A ROUTE IS SPLIT OR DIVIDED, THE EMPLOYEE WHOSE ROUTE IS SPLIT OR DIVIDED SHALL HAVE FIRST CHOICE OF THE TWO ROUTES.

THE CALCULATION OF THIS SPLIT SHALL BE GOVERNED BY THE 13 WEEKS AVERAGE PAY IMMEDIATELY PRECEDING THE DIVIDING OF SUCH ROUTE. SUCH GUARANTEE SHALL BE PAID FOR A PERIOD OF THIRTEEN (13) WEEKS. THE AMOUNT OF THE SPLIT SELECTED BY THE EMPLOYEE SHALL BE THE NEW GUARANTEED BASE, FIGURED ON A FOUR (4) WEEK AVERAGE IMMEDIATELY PRIOR TO THE ROUTE SPLIT.

SEC. 9.2 IT IS FURTHER AGREED BY THE EMPLOYER THAT THE EMPLOYEE WHOSE ROUTE IS SPLIT OR DIVIDED SHALL RECEIVE IN ADDITION TO THE NEW GUARANTEED BASE HEREIN, STATED COMMISSIONS ON ALL NEW BUSINESS WHICH THE SAID EMPLOYEE DURING THE GUARANTEED PERIOD PUTS ON THE ROUTE THROUGH HIS PERSONAL EFFORTS, BUT HE SHALL NOT RECEIVE IN ADDITION TO THE NEW GUARANTEED BUSINESS, COMMISSION ON BUSINESS THE EMPLOYER PURCHASES FROM OTHER PERSONS.

SEC. 9.4 *FILLING JOB VACANCIES:* WHEN AN EMPLOYER DETERMINES THAT A JOB VACANCY OR OPENING EXITS, PRIOR TO FILLING THAT VACANCY OR OPENING ON A DIFFERENT WORK SHIFT, THE EMPLOYER SHALL FIRST POST A NOTICE ON THE BULLETIN BOARD EXPLAINING THE JOB CLASSIFICATION.

ANY EMPLOYEE INTERESTED IN FILLING THE VACANCY MUST MAKE THE REQUEST TO THE EMPLOYER AND THE UNION IN WRITING. SENIORITY SHALL BE THE GOVERNING FACTOR. EMPLOYEES WITH GREATER SENIORITY SHALL BE GRANTED PREFERENCE REGARDING THE SELECTION OF WORKWEEK AND WORK SHIFT, PROVIDED THAT THEY POSSESS THE SKILL AND ABILITY TO PERFORM THE JOB DUTIES.

## ARTICLE 10 – FIVE-DAY WORK WEEK

SECTION 10.1 FIVE DAYS OF WORK, MONDAY THROUGH SATURDAY, SHALL CONSTITUTE THE WORK WEEK. EMPLOYEES SHALL WORK FIVE DAYS IN A HOLIDAY WEEK.

## ARTICLE 11 – HOLIDAYS AND SUNDAY

SECTION 11.1 AN EMPLOYEE SHALL NOT BE PERMITTED TO WORK UNDER ANY CIRCUMSTANCES ON SUNDAY OR THE FOLLOWING LEGAL HOLIDAYS:

- NEW YEAR'S DAY
- MEMORIAL DAY
- FOURTH OF JULY
- LABOR DAY
- THANKSGIVING DAY
- CHRISTMAS DAY
- FLOATING BIRTHDAY/PERSONAL DAY

THERE SHALL BE NO DEDUCTION IN PAY FOR EMPLOYEES WHO DO NOT WORK ON THE ABOVE MENTIONED HOLIDAYS. THE WORK WEEK SHALL BEGIN ON MONDAY A.M. AND TERMINATE ON SATURDAY.

## ARTICLE 12 – REGULATIONS AS TO C.O.D. BUSINESS

SECTION 12.1 EMPLOYEES SHALL BE RESPONSIBLE FOR C.O.D. BUSINESS DELIVERED BY THEM AND ANY CREDIT ISSUED BY THEM AS THE EMPLOYEE WILL NOT BE REQUESTED TO EXTEND CREDIT TO THE CUSTOMER.

SEC. 12.2 EMPLOYEES SHALL NOT BE REQUESTED TO PAY FOR LEDGER ACCOUNTS APPROVED BY THE EMPLOYER, AND FURTHER, NO EMPLOYEE SHALL BE REQUESTED TO PAY FOR LAUNDRY OR DRY CLEANING RETURNED TO THE PLANT FOR CHARGES, BUT SHALL RECEIVE FULL COMPENSATION FOR SAME.

SEC. 12.3 THE DRIVER SHALL RECEIVE FULL COMMISSION ON ALL FUR AND OTHER DRY CLEANING STORAGE ITEMS AND SHALL BE ENTITLED TO RECEIVE SAID COMMISSIONS WHEN THE STORAGE ORDER IS DELIVERED TO OR RECEIVED BY THE CUSTOMER.

SEC. 12.4 EMPLOYEE WILL NOT BE HELD RESPONSIBLE FOR PERSONAL CHECKS HE RECEIVES MADE IN THE EXACT AMOUNT OF DELIVERY.

## ARTICLE 13 – PAY DAY-FAILURE TO PAY AT TIME OF DISMISSAL AND SETTLEMENT REGARDING OUTSTANDING ACCOUNTS

SECTION 13.1 THE EMPLOYER AGREES WITH THE UNION THAT ALL SALARIES WILL BE PAID WEEKLY NOT LATER THAN SATURDAY OF THE FOLLOWING WEEK, IN LAWFUL CURRENCY OR NEGOTIABLE CHECK. WITH HIS WEEKLY SALARY, THE EMPLOYEE SHALL, UPON REQUEST, BE GIVEN AN EXPLANATION AS TO THE EMPLOYER'S CALCULATION OF WAGES PLUS ANY APPLICABLE COMMISSION, AND WHEN THERE ARE ANY OUTSTANDING ACCOUNTS CHARGED AGAINST THE EMPLOYEE, HE WILL BE GIVEN UNTIL HIS REGULAR PAY DAY TO SETTLE SUCH OUTSTANDING ACCOUNTS. FURTHER, WHEN AN EMPLOYEE QUITS HIS POSITION OR IS DISMISSED, THE EMPLOYER AGREES TO PAY THE EMPLOYEE NO LATER THAN THE NEXT REGULARLY SCHEDULED PAY DAY.

## ARTICLE 14 – RESPONSIBILITY OF EMPLOYEES DUE TO ROBBERIES AND THEFTS

SECTION 14.1 THE PARTIES AGREE THAT EMPLOYEES SHALL NOT BE HELD RESPONSIBLE FOR LOSSES DUE TO ROBBERY OR THEFT.

## ARTICLE 15 – EMPLOYEES AUTHORIZED EXPENSES

SECTION 15.1  THE EMPLOYER AGREES THAT THEY SHALL ACCEPT ALL AUTHORIZED EXPENSES WHICH ARE INCURRED ON THE ROUTE WEEKLY, AND CREDIT SAME AS CASH TO THE EMPLOYEE WHEN THE EMPLOYEES STATEMENT IS PAID WEEKLY.

## ARTICLE 16 – UNIFORMS

SECTION 16.1  THE EMPLOYER AGREES WITH THE UNION THAT THE EMPLOYER WILL PAY THE COST OF ALL OR ANY PART OF UNIFORMS OR WEARING APPAREL CONSTITUTING ANY PART OF A UNIFORM THAT THEY REQUIRE THE EMPLOYEE TO WEAR. IT IS FURTHER AGREED THAT THE EMPLOYER WILL LAUNDER OR CLEAN SAID UNIFORMS OR WEARING APPAREL FOR THE EMPLOYEE FREE OF ANY SERVICE CHARGE, SAID UNIFORM OR WEARING APPAREL TO REMAIN THE PROPERTY OF THE EMPLOYER.

## ARTICLE 17 – SICK DAYS

SECTION 17.1 AN EMPLOYEE WHO TAKES NO TIME OFF WORK ON HIS OWN ACCORD DURING EACH CALENDAR QUARTER EFFECTIVE JULY 1, 2006 SHALL BE PAID A ONE HUNDRED ($100.00) DOLLAR BONUS PER QUARTER.  THE BONUS WILL BE PAID THE FIRST WEEK OF THE FOLLOWING QUARTER.  SCHEDULED VACATIONS, BIRTHDAYS AND PAID HOLIDAYS SHALL COUNT AS TIME WORKED FOR PURPOSES OF THIS ARTICLE.

## ARTICLE 18 – VACATIONS

SECTION 18.1 ANY EMPLOYEE CONTINUOUSLY EMPLOYED BY THE EMPLOYER FOR FIFTY-TWO (52) WEEKS SHALL BE ENTITLED TO ONE (1) WEEK VACATION WITH PAY IN ACCORDANCE WITH THE WAGE SCALE SET FORTH HEREIN.

ANY EMPLOYEE CONTINUOUSLY EMPLOYED BY THE EMPLOYER FOR A PERIOD OF ONE HUNDRED FOUR (104) WEEKS (TWO YEARS) SHALL BE ENTITLED TO RECEIVE TWO (2) CONSECUTIVE WEEKS' VACATION WITH PAY IN ACCORDANCE WITH THE WAGE SCALE SET FORTH HEREIN.

ANY EMPLOYEE CONTINUOUSLY EMPLOYED BY THE EMPLOYER FOR A PERIOD OF FIVE HUNDRED TWENTY (520) WEEKS. – TEN (10) YEARS – OR MORE, SHALL BE ENTITLED TO RECEIVE THREE (3) WEEKS' VACATION WITH PAY. AT THE OPTION OF THE EMPLOYEE, HE MAY ELECT TO TAKE TWO (2) WEEKS' VACATION WITH THREE (3) WEEKS' PAY.

ANY EMPLOYEE CONTINUOUSLY EMPLOYED BY HIS EMPLOYER FOR A PERIOD OF SEVEN HUNDRED EIGHTY (780) WEEKS – FIFTEEN (15) YEARS – OR MORE, SHALL BE ENTITLED TO RECEIVE FOUR (4) WEEKS' VACATION WITH PAY. AT THE OPTION OF THE EMPLOYEE, HE MAY ELECT TO TAKE THREE (3) WEEKS' VACATION WITH FOUR (4) WEEKS' PAY.

SEC. 18.2 AN EMPLOYEE WHO IS ENTITLED TO TWO (2) OR MORE WEEKS VACATION, AT HIS OPTION AT THE TIME HE IS SELECTING HIS VACATION, MAY CHOOSE TO SPLIT HIS VACATION. WHEN AN EMPLOYEE DECIDES TO SPLIT HIS VACATION TIME, SENIORITY SHALL BE USED FOR THE FIRST CHOICE AND AGAIN AFTER ALL OTHER EMPLOYEES HAVE HAD AN OPPORTUNITY TO MAKE A FIRST CHOICE AND ACCORDINGLY EACH TIME THEREAFTER.

SEC. 18.3 ANY REGULAR EMPLOYEE (EMPLOYED FOR (1) OR MORE YEARS) WHOSE EMPLOYMENT IS TERMINATED FOR ANY REASON WHATSOEVER, SHALL RECEIVE PAYMENT FOR VACATION TIME EARNED BUT NOT TAKEN. FOR EACH MONTH SUCH EMPLOYEE HAS WORKED SINCE HE BECAME ENTITLED TO RECEIVE HIS LAST PRECEDING ANNUAL VACATION, HE SHALL BE PAID ONE-TWELFTH OF THE ANNUAL VACATION PAY WHICH HE WOULD HAVE BEEN ENTITLED TO RECEIVE AT THE TIME HIS EMPLOYMENT WAS TERMINATED.

SEC. 18.4 SHOULD THE EMPLOYER INSIST THAT AN EMPLOYEE TAKE HIS VACATION DURING A PERIOD IN WHICH A HOLIDAY OCCURS, THEN UNDER SUCH CIRCUMSTANCES THE EMPLOYEE SHALL RECEIVE AN EXTRA DAY'S PAY OR A PAID DAY OFF FROM HIS DUTIES AT SOME FUTURE DATE AT THE CONVENIENCE OF HIS EMPLOYER.

SEC. 18.5 EMPLOYEES WILL BE PERMITTED TO ACCEPT PAY IN LIEU OF VACATION IF IT IS MUTUALLY AGREED BETWEEN THE EMPLOYEE AND THE EMPLOYER. ALL UNUSED VACATION MUST BE PAID OUT NO LATER THAN DECEMBER 31 OF EACH YEAR OF THIS AGREEMENT.

SEC. 18.6 THE EMPLOYER AGREES TO POST A VACATION LIST FOR THE EMPLOYEES WHERE THEY CAN OBSERVE IT. ANNOUNCEMENT OF ANNUAL VACATION SHALL BE POSTED THIRTY (30) DAYS BEFORE THE VACATION PERIOD COMMENCES. THE VACATION PERIOD WILL OPERATE FROM JANUARY 1ST TO DECEMBER 31ST, BASED ON SENIORITY. THE VACATION SCHEDULE WILL INCLUDE A 12-WEEK BLACKOUT PERIOD IN WHICH VACATIONS MAY NOT BE TAKEN. THE BLACKOUT PERIOD IS SET BY THE EMPLOYER.

SEC. 18.7 ELIGIBILITY FOR VACATION SHALL BEGIN WITH THE DATE OF EMPLOYMENT OF EACH INDIVIDUAL EMPLOYEE, AND EACH YEAR OF ELIGIBILITY SHALL START WITH SUCH DATE.

SEC. 18.8    AN AVERAGE OF THE LAST THIRTEEN (13) CONSECUTIVE PAY PERIODS WILL BE USED TO DETERMINE VACATION PAY WHEN AN EMPLOYEE IS DISCHARGED OR QUITS HIS POSITION. VACATIONS TAKEN UNDER NORMAL CONDITIONS WILL BE COMPENSATED FOR ON THE BASIS OF WHAT THE ROUTE EARNS WHILE THE EMPLOYEE IS ON VACATION.

## ARTICLE 19 – SALES AND TRANSFERS

SECTION 19.1 THIS AGREEMENT SHALL BE BINDING UPON THE PARTIES HERETO, THEIR RESPECTIVE SUCCESSORS, ADMINISTRATORS, EXECUTORS, ASSIGNS AND LEGAL REPRESENTATIVES, IN THE EVENT THE EMPLOYER'S BUSINESS OR OPERATION OR ANY PART OF EITHER IS SOLD, LEASED, TRANSFERRED OR TAKEN OVER BY ANY MEANS WHATSOEVER, INCLUDING BUT NOT LIMITED TO SALES, TRANSFER, LEASE, SUCCESSION, MERGER, CONSOLIDATION, ASSIGNMENT, RECEIVERSHIP, BANKRUPTCY PROCEEDINGS OR OPERATION OF LAW. THE EMPLOYER SHALL NOT USE ANY LEASING DEVICE TO A THIRD PARTY OR ANY OTHER DEVICE TO EVADE THIS AGREEMENT.
IN THE EVENT THE EMPLOYER'S BUSINESS OR OPERATION OR ANY PART OF EITHER IS SOLD, LEASED, TRANSFERRED OR TAKEN OVER BY ANY MEANS WHATSOEVER, INCLUDING BUT NOT LIMITED TO SALE, TRANSFER, LEASE, SUCCESSION, MERGER, CONSOLIDATION, ASSIGNMENT, RECEIVERSHIP, BANKRUPTCY PROCEEDINGS OR OPERATION OF LAW, MONEYS WILL BE DEPOSITED INTO AN ESCROW ACCOUNT TO PROVIDE FOR PAYMENT OF ALL OUTSTANDING WAGES, ACCRUED VACATION PAY AND ACCRUED VACATION BONUS OR MONEYS DUE TO THE UNION OR ANY TRUST OR FUND FOR WHICH CONTRIBUTIONS ARE PROVIDED PURSUANT THIS AGREEMENT.

SEC. 19.2 THE EMPLOYER SHALL GIVE WRITTEN NOTICE (WHICH SHALL HAVE ATTACHED THERETO A COPY OF THE AGREEMENT) TO ANY PURCHASER, TRANSFEREE, LESSEE, SUCCESSORS, ETC., OF THE EXISTENCE OF THIS AGREEMENT AND THE OPERATION OF ANY PART COVERED THEREBY, AND A COPY OF SUCH NOTICE SHALL BE SERVED UPON THE UNION BY CERTIFIED OR REGISTERED MAIL NO LATER THAN SIX (6) DAYS PRIOR TO PAYMENT OF ANY OF THE CONSIDERATION OTHER THAN EARNEST MONEY.

SEC. 19.3  IN THE EVENT THE EMPLOYER FAILS TO GIVE THE NOTICE HEREINABOVE REQUIRED AND FAILS TO MAKE APPROPRIATE ARRANGEMENTS REQUIRING THE PURCHASER, LESSEE, TRANSFEREE, SUCCESSOR, ETC., TO ASSUME THE OBLIGATIONS OF THIS CONTRACT, THEN THE EMPLOYER SHALL BE LIABLE TO THE UNION AND TO THE EMPLOYEE COVERED FOR ALL DAMAGES SUSTAINED AS A RESULT OF SUCH FAILURE TO GIVE NOTICE OR SUCH FAILURE TO ACQUIRE ASSUMPTION OF THIS CONTRACT WITHOUT IN ANY WAY AFFECTING OR RELIEVING THE LIABILITY OF SUCH SUCCESSOR, TRANSFEREE, LESSEE, ETC.

SEC. 19.4 THE BUYING EMPLOYER SHALL ASSUME AND PAY ALL OUTSTANDING WAGES TO THE EMPLOYEES OR MONEYS DUE TO THE UNION OR ANY TRUST OR FUND FOR WHICH CONTRIBUTIONS ARE PROVIDED UNDER THIS AGREEMENT.

SEC. 19.5 IT IS FURTHER AGREED BY AND BETWEEN THE PARTIES THAT NO EMPLOYEE SHALL BE DISCHARGED BY REASON OF ANY TRANSFER, OR ASSIGNMENT BY THE EMPLOYER OF ITS BUSINESS AND OTHER ASSETS TO ANY OTHER FIRM, UNTIL ALL WAGES DUE EMPLOYEES AND ALL MONEYS DUE THE UNION OR MONEYS DUE TO ANY TRUST OR FUND UNDER THIS AGREEMENT HAVE BEEN PAID.

SEC. 19.6 IN THE EVENT THERE IS ANY CONSOLIDATION OF ROUTES, NOT INCONSISTENT WITH THE PROVISIONS OF THIS AGREEMENT, OR ANY EMPLOYER BUYS OR SELLS TO EACH OTHER AND CONSOLIDATES, MERGES OR TAKES OVER THE BUSINESS OF ANOTHER EMPLOYER, THE EMPLOYEES' SENIORITY FOR PURPOSES OF AGREEMENT, SHALL BE DETERMINED ON THE BASIS OF ALL OF THEIR SERVICES RENDERED TO ANY PREDECESSOR EMPLOYER.

## ARTICLE 20 – CHECKING RECORDS

SECTION 20.1 A REPRESENTATIVE OF THE UNION SHALL HAVE THE RIGHT TO VISIT THE PREMISES OF THE EMPLOYER FOR THE PURPOSE OF NEGOTIATIONS AND ADJUSTMENTS OF GRIEVANCES, AND TO SEE THAT THIS AGREEMENT IS FULLY PERFORMED. THE EMPLOYER AGREES TO PERMIT THE INSPECTION OF HIS PAYROLL AND RECORDS IN REFERENCE TO THE GRIEVANCE BY AUTHORIZED REPRESENTATIVES OF THE UNION FOR THE SOLE PURPOSE OF INVESTIGATING WHETHER THE PROVISIONS OF THIS AGREEMENT ARE FULFILLED.

## ARTICLE 21 – EQUIPMENT INSPECTION/TRUCK MAINTENANCE

SECTION 21.1 A PRE-TRIP INSPECTION WILL HELP YOU DISCOVER PROBLEMS THAT COULD CAUSE AN ACCIDENT OR BREAKDOWN RESULTING IN DEATH AND/OR BODILY HARM, NOT TO MENTION LOSS OF REVENUE.  NO COMMERCIAL MOTOR VEHICLE SHALL BE DRIVEN UNLESS THE DRIVER THEREOF SHALL HAVE SATISFIED THAT THE FOLLOWING PARTS AND ACCESSORIES ARE IN GOOD WORKING ORDER.

## *DURING TRIP:*

FOR SAFETY REASONS, EACH DRIVER MUST INSPECT AND MONITOR GAUGES FOR SIGNS OF TROUBLE. USE YOUR SENSES TO CHECK FOR PROBLEMS SUCH AS:

- STEERING MECHANISM
- TIRES, WHEELS AND RIMS
- BRAKES
- LIGHTING DEVICES AND REFLECTORS
- REAR VISION MIRROR/MIRRORS
- HORN
- WINDSHIELD WIPER/WIPERS
- CARGO SECUREMENT DEVICES
- BRAKE AND ELECTRICAL CONNECTIONS TO TRAILER – WHERE APPLICABLE
- TRAILER COUPLING DEVICES – WHERE APPLICABLE

## *POST INSPECTION:*

YOU SHOULD CONDUCT A POST-TRIP INSPECTION AT THE END OF THE TRIP, DAY OR TOUR OF DUTY ON EACH VEHICLE YOU OPERATED. IT MAY INCLUDE FILLING OUT A VEHICLE CONDITION REPORT LISTING ANY PROBLEMS YOU DISCOVER. THE INSPECTION REPORT HELPS THE EMPLOYER KNOW THAT THE VEHICLE IS IN NEED OF REPAIR.

ROUTE REPRESENTATIVES WILL BE RESPONSIBLE FOR MAINTENANCE WHILE TRUCKS ARE IN THEIR CARE ON THEIR RESPECTIVE ROUTES.

IT SHALL BE THE RESPONSIBILITY OF THE ROUTE REPRESENTATIVES TO KEEP THE TRUCK CAB AND INSIDE OF THE TRUCK BODY CLEAN AD FREE OF ALL REFUSE. IT SHALL ALSO BE THE RESPONSIBILITY OF THE EMPLOYEE TO PERFORM ROUTINE DAILY CHECKS SUCH AS OIL LEVEL, TIRE PRESSURE, AND TO REPORT ANY MECHANICAL PROBLEMS THAT THEY ENCOUNTER WITH TRUCKS ON THE VEHICLE CONDITION REPORT FORM SUPPLIED BY THE EMPLOYER FOR SUCH PURPOSE.

ALL TRUCKS SHALL BE EQUIPPED WITH WORKING HEATERS AND DEFROSTERS. EMPLOYEES SHALL NOT BE REQUIRED TO DRIVE UNSAFE VEHICLES. IN ORDER TO ENSURE THE SAFE CONDITION OF THEIR VEHICLES, EMPLOYEES WILL REPORT ANY VEHICULAR MAINTENANCE PROBLEM THROUGH THE DESIGNATED EMPLOYER REPRESENTATIVE OR MAINTENANCE PROGRAM.

## ARTICLE 22 – RESPONSIBILITY OF EMPLOYEES PERTAINING TO CITY AND STATE ORDINANCES

SECTION 22.1 THE EMPLOYER AGREES THAT ALL VEHICLES USED ON THE VARIOUS ROUTES SHALL BE EQUIPPED SO AS TO COMPLY WITH THE CITY AND STATE ORDINANCES; AND IT IS FURTHER AGREED THAT NO EMPLOYEE SHALL BE HELD RESPONSIBLE FOR ANY DAMAGE ON ACCOUNT OF ACCIDENTS CAUSED THROUGH HIS OPERATION OF SAID VEHICLE.

SEC. 22.2 THIS ARTICLE WILL NOT APPLY IF THE EMPLOYEE USED EMPLOYER'S TRUCK FOR ANY PURPOSE WHATSOEVER, OTHER THAN EMPLOYER'S SERVICES.

SEC. 22.3 IT IS FURTHER AGREED BY BOTH PARTIES HERETO THAT THE EMPLOYEE WILL BE PERSONALLY RESPONSIBLE FOR ANY VIOLATION OF ANY STATE, CITY OR VILLAGE TRAFFIC RULES, REGULATIONS, OR ORDINANCES, IN THE OPERATION OF THE EMPLOYER'S VEHICLE.

SEC. 22.4 IT IS AGREED BY BOTH PARTIES THAT IT WILL BE NO BREACH OF THIS AGREEMENT WHEN AN EMPLOYEE REFUSES TO OPERATE A VEHICLE THAT DOES NOT COMPLY WITH THE CITY AND STATE ORDINANCES.

## ARTICLE 23 – LAVATORIES

SECTION. 23.1 IT IS AGREED BY THE EMPLOYER THAT THE LAVATORIES USED BY THE EMPLOYEES IN THEIR RESPECTIVE PLANTS WILL BE EQUIPPED WITH TOWELS AND WASHING FACILITIES. FURTHER, IT IS AGREED THAT THE SAID LAVATORIES WILL BE KEPT IN A SANITARY CONDITION AT ALL TIMES AS REQUIRED BY THE BOARD OF HEALTH.

## ARTICLE 24 – FUNERAL LEAVE

SECTION 24.1 IN THE EVENT OF DEATH IN THE IMMEDIATE FAMILY OF ANY EMPLOYEE IN THE BARGAINING UNIT, THE EMPLOYEE SHALL BE PERMITTED TO BE ABSENT FROM WORK, FROM THE DATE OF DEATH TO THE DATE OF FUNERAL, INCLUSIVE, AND SHALL BE PAID FOR ANY SCHEDULED WORKING TIME LOST BY THE AFFECTED EMPLOYEE, UP TO A MAXIMUM OF THREE (3) CONSECUTIVE WORK DAYS, ON THE BASIS OF EIGHT (8) HOURS PER DAY AT STRAIGHT TIME. IMMEDIATE FAMILY FOR THE PURPOSE OF THIS SECTION SHALL INCLUDE THE FATHER, MOTHER, SPOUSE, CHILDREN, BROTHER AND SISTER OF THE EMPLOYEE, AS WELL AS THE EMPLOYEE'S SPOUSE'S FATHER, MOTHER AND CHILDREN, IF THE FUNERAL IS ATTENDED. THE EMPLOYER MAY REQUIRE PROOF OF DEATH AND RELATIONSHIP. ANY EMPLOYEE NEEDING ADDITIONAL TIME OFF AS A RESULT OF ATTENDING AN OUT-OF-TOWN FUNERAL MAY UTILIZE UP TO THREE (3) ADDITIONAL DAYS OF ACCRUED VACATION TIME.

## ARTICLE 25 – HEALTH AND WELFARE

SECTION 25.1 THE EMPLOYER SHALL CONTRIBUTE AND PAY TO THE LOCAL UNION NO. 731, I.B. OF T. GARAGE ATTENDANT, LINEN & LAUNDRY HEALTH AND WELFARE FUND (HEREINAFTER CALL "HEALTH & WELFARE FUND") BEGINNING ON THE FIRST DAY OF EMPLOYMENT FOR EMPLOYEES WHO HAVE WORKED FOR A PREVIOUS EMPLOYER WHO HAS MADE CONTRIBUTIONS TO THE FUND PURSUANT TO A COLLECTIVE BARGAINING AGREEMENT WITH THE UNION, AND BEGINNING ON THE THIRTY-FIRST (31ST) DAY OF EMPLOYMENT, FOR ALL OTHER EMPLOYEES AFTER THEIR DATE OF EMPLOYMENT, EFFECTIVE MAY 1, 2006, THE SUM OF HUNDRED THIRTY SEVEN DOLLARS AND FIFTY CENTS ($137.50) PER WEEK FOR EACH COVERED EMPLOYEE EMPLOYED DURING THE CALENDAR WEEK.

SEC.   25.2 THERE SHALL BE AN INCREASE IN FRINGE BENEFIT CONTRIBUTIONS (HEALTH & WELFARE AND PENSION FUND) ACCORDING TO THE FOLLOWING SCHEDULE.   ALLOCATION OF THESE AMOUNTS SHALL BE DETERMINED BY THE LOCAL UNION EXECUTIVE BOARD, THIRTY (30) DAYS PRIOR TO THE EFFECTIVE DATE OF SAID INCREASES.

- EFFECTIVE MAY 1, 2007.........$0.37.5 PER HOUR ($15.00 PER WEEK/PER MEMBER)
- EFFECTIVE MAY 1, 2008.........$0.37.5 PER HOUR ($15.00 PER WEEK/PER MEMBER)
- EFFECTIVE MAY 1, 2009.........$0.37.5 PER HOUR ($15.00 PER WEEK/PER MEMBER)

SEC. 25.2 THE EMPLOYER SHALL ALSO SUBMIT A REMITTANCE REPORT IN A FORM TO BE FURNISHED BY THE ADMINISTRATOR OF THE HEALTH AND WELFARE FUND, INDICATING THE NAME OF EACH EMPLOYEE EMPLOYED DURING THE PERIOD FOR WHICH THE REPORT IS MADE, IRRESPECTIVE OF WHETHER ANY CONTRIBUTIONS ARE MADE FOR SUCH EMPLOYEE, THE DATE SUCH EMPLOYEE WAS HIRED, RE-EMPLOYED, LAID-OFF OR TERMINATED, THE SOCIAL SECURITY NUMBER OF EACH NEW EMPLOYEE, THE PERIOD OF TIME FOR WHICH THE REPORT IS MADE, THE AMOUNT CONTRIBUTED ON BEHALF OF EACH EMPLOYEE, AND THE REASON CONTRIBUTIONS HAVE BEEN MADE, IF SUCH IS THE CASE.

THE REMITTANCE FORM AND CONTRIBUTIONS SHALL BE SUBMITTED EACH MONTH TO THE ADMINISTRATOR OF EACH FUND NOT LATER THAN THE TWENTIETH (20TH) DAY OF THE MONTH FOLLOWING THE MONTH FOR WHICH CONTRIBUTIONS ARE DUE.

SEC. 25.3 IN THE EVENT AN EMPLOYEE BECOMES SICK OR SUSTAINS AN INJURY NOT ARISING OUT OF OR IN THE COURSE OF HIS EMPLOYMENT, THE EMPLOYER SHALL CONTINUE TO MAKE THE SPECIFIED CONTRIBUTIONS TO THE HEALTH AND WELFARE AND PENSION FUNDS FOR THE PERIOD OF TIME SUCH EMPLOYEE IS OFF WORK, NOT TO EXCEED FOUR (4) FULL GUARANTEED WEEKS, FOLLOWING THE WEEK IN WHICH SICKNESS OR INJURY OCCURRED. THE EMPLOYER SHALL MAKE CONTRIBUTIONS, AS PROVIDED IN SECTIONS 25.1 AND 25.2 ABOVE, DURING AN EMPLOYEE'S REGULAR VACATION PERIOD.

SEC. 25.4  IN THE EVENT AN EMPLOYEE SUSTAINS AN INJURY OR OCCUPATIONAL DISEASE ARISING OUT OF AND IN THE COURSE OF THEIR EMPLOYMENT, THE EMPLOYER SHALL CONTINUE TO MAKE THE SPECIFIED CONTRIBUTIONS TO THE HEALTH AND WELFARE AND PENSION FUNDS, COMMENCING WITH THE FIRST FULL GUARANTEED WEEK FOLLOWING THE OCCURRENCE OR ONSET OF SUCH ACCIDENTAL INJURY OR OCCUPATIONAL DISEASE, AND CONTINUING DURING THE PERIOD OF TEMPORARY TOTAL DISABILITY AS THAT PERIOD OF TIME IS DETERMINED BY AGREEMENT BETWEEN THE EMPLOYER AND THE EMPLOYEE, OR UNTIL A SETTLEMENT UNDER THE WORKERS' COMPENSATION ACT IS MADE, OR IN THE EVENT OF NO AGREEMENT OR SETTLEMENT, FOR THE PERIOD OF TIME THAT TEMPORARY TOTAL DISABILITY IS FOUND TO HAVE EXISTED BY THE INDUSTRIAL COMMISSION OF ILLINOIS, BUT IN NO EVENT SHALL THE EMPLOYER BE REQUIRED TO CONTINUE CONTRIBUTIONS UNDER THIS SECTION  FOR A NUMBER OF WEEKS GREATER THAN THE WEEKLY INDEMNITY PERIOD PROVIDED BY THE HEALTH AND WELFARE PLAN THEN IN EFFECT.

SEC. 25.5  THE EMPLOYER AGREES TO MAKE AVAILABLE TO THE TRUSTEES OF SAID FUND, ANY AND ALL  INFORMATION REGARDING THE EMPLOYEES THAT SAID TRUSTEES MAY REQUIRE IN CONNECTION WITH THE SOUND AND EFFICIENT OPERATION OF SAID FUND.

SEC. 25.6  NO CONTRIBUTIONS TO THE HEALTH AND WELFARE FUND SHALL BE REQUIRED ON BEHALF OF ANY EMPLOYEE WHO IS ON LEAVE OF ABSENCE, UNLESS THE LEAVE OF ABSENCE IS PURSUANT TO THE FAMILY MEDICAL LEAVE ACT (F.M.L.A.).

SEC. 25.7  THE EMPLOYER HEREBY AGREES THAT IT IS BOUND BY AND IS A PARTY TO THE TRUST AGREEMENTS CREATING THIS HEALTH AND WELFARE FUND AND BY ANY FUTURE AMENDMENTS THERETO, OTHER THAN THAT THE TRUSTEES SHALL HAVE NO RIGHT TO AMEND THE TRUST AGREEMENT CHANGING THE AMOUNTS OF CONTRIBUTIONS REQUIRED UNDER THIS AGREEMENT, AND HEREBY DESIGNATES AS ITS REPRESENTATIVES ON THE BOARD OF TRUSTEES, SUCH TRUSTEES AS ARE NAMED IN SAID AGREEMENT AND DECLARATION OF TRUST, AS EMPLOYER TRUSTEES, TOGETHER WITH THEIR SUCCESSORS, SELECTED IN THE MANNER PROVIDED IN SAID AGREEMENT AND DECLARATION OF TRUST AS IT MAY BE AMENDED FROM TIME TO TIME.

THE EMPLOYER FURTHER AGREES TO BE BOUND BY ALL ACTION TAKEN BY SAID EMPLOYER TRUSTEES PURSUANT TO SAID AGREEMENT AND DECLARATION OF TRUST AS AMENDED FROM TIME TO TIME.

SEC. 25.8  FAILURE TO PAY CONTRIBUTIONS WHEN DUE TO THE AFORESAID HEALTH AND WELFARE FUND SHALL CONSTITUTE A BREACH OF THIS CONTRACT AND SHALL NOT BE SUBJECT TO THE LABOR MANAGEMENT COMMITTEE PROCEDURES AS HEREIN, AND THE UNION SHALL HAVE THE RIGHT TO CALL A WORK STOPPAGE PROVIDING THAT PRIOR THERETO, THE UNION SHALL GIVE THE EMPLOYER TEN (10) DAYS' NOTICE IN WRITING VIA CERTIFIED MAIL; AND THE DELINQUENT EMPLOYER SHALL BE LIABLE DIRECTLY TO  SAID EMPLOYEES FOR ALL BENEFITS SAID EMPLOYEES WOULD HAVE OTHERWISE RECEIVED FROM THE HEALTH AND WELFARE FUND WERE IT NOT FOR THE EMPLOYER'S DELINQUENCY, INCLUDING COSTS AND REASONABLE ATTORNEY'S FEES TO ENFORCE PAYMENT THEREOF.

SEC. 25.9 THE OBLIGATION TO MAKE HEALTH AND WELFARE CONTRIBUTIONS SHALL CONTINUE DURING PERIODS WHEN A NEW COLLECTIVE BARGAINING AGREEMENT IS BEING NEGOTIATED, UNLESS THERE IS A WORK STOPPAGE OR LOCKOUT.

### ARTICLE 26 – PENSION FUND

SECTION 26.1 THE EMPLOYER SHALL CONTRIBUTE AND PAY TO THE LOCAL UNION NO. 731, I.B. OF T. TEXTILE MAINTENANCE AND LAUNDRY CRAFT PENSION FUND BEGINNING ON THE FIRST DAY OF EMPLOYMENT FOR EMPLOYEES WHO HAVE WORKED FOR A PREVIOUS EMPLOYER WHO HAD MADE CONTRIBUTIONS TO THE FUND PURSUANT TO A COLLECTIVE BARGAINING AGREEMENT WITH THE UNION, AND BEGINNING ON THE THIRTY-FIRST (31ST) DAY OF EMPLOYMENT FOR ALL OTHER EMPLOYEES AFTER THEIR DATE OF EMPLOYMENT EFFECTIVE MAY 1, 2006, THE SUM OF SIXTY-FIVE AND 85/100 DOLLARS ($65.85) FOR EACH EMPLOYEE COVERED BY THIS AGREEMENT FOR EACH WEEK EACH EMPLOYEE PERFORMS ANY WORK THEREAFTER FOR THE PURPOSE OF PROVIDING SAID EMPLOYEES WITH RETIREMENT OR PENSION BENEFITS AS THE TRUSTEES OF SAID FUND MAY DETERMINE. THE FUND SHALL IN ALL RESPECTS BE ADMINISTERED IN ACCORDANCE WITH THE TRUST AGREEMENT AND AMENDMENTS THERETO.

SEC. 26.2 THERE SHALL BE AN INCREASE IN FRINGE BENEFIT CONTRIBUTIONS (HEALTH & WELFARE AND PENSION FUND) ACCORDING TO THE FOLLOWING SCHEDULE. ALLOCATION OF THESE AMOUNTS SHALL BE DETERMINED BY THE LOCAL UNION EXECUTIVE BOARD, THIRTY (30) DAYS PRIOR TO THE EFFECTIVE DATE OF SAID INCREASES.

- EFFECTIVE MAY 1, 2007.........$0.37.5 PER HOUR ($15.00 PER WEEK/PER MEMBER)
- EFFECTIVE MAY 1, 2008.........$0.37.5 PER HOUR ($15.00 PER WEEK/PER MEMBER)
- EFFECTIVE MAY 1, 2009.........$0.37.5 PER HOUR ($15.00 PER WEEK/PER MEMBER)

SEC. 26.3    THE EMPLOYER SHALL ALSO SUBMIT A REMITTANCE REPORT IN A FORM TO BE FURNISHED BY THE ADMINISTRATOR OF THE PENSION FUND, INDICATING THE NAME OF EACH EMPLOYEE EMPLOYED DURING THE PERIOD FOR WHICH THE REPORT IS MADE, IRRESPECTIVE OF WHETHER ANY CONTRIBUTIONS ARE MADE FOR SUCH EMPLOYEE, THE DATE SUCH EMPLOYEE WAS HIRED, RE-EMPLOYED, LAID-OFF, OR TERMINATED, THE SOCIAL SECURITY NUMBER OF EACH NEW EMPLOYEE, THE PERIOD OF TIME FOR WHICH THE REPORT IS MADE, THE AMOUNT CONTRIBUTED ON BEHALF OF EACH EMPLOYEE, AND THE REASON NO CONTRIBUTIONS HAVE BEEN MADE, IF SUCH IS THE CASE.    THE REMITTANCE FORM AND CONTRIBUTIONS SHALL BE SUBMITTED EACH MONTH TO THE ADMINISTRATOR OF THE FUND NOT LATER THAN THE TWENTIETH (20TH) DAY OF THE MONTH FOLLOWING THE MONTH FOR WHICH CONTRIBUTIONS ARE DUE.

SEC. 26.4    THE EMPLOYER SHALL PAY CONTRIBUTIONS TO THE PENSION FUND DURING THE VACATION PERIOD OF AN EMPLOYEE, AND ALSO FOR THE FIRST FULL WEEK OF AN EMPLOYEE'S ILLNESS.

SEC. 26.5    IN THE EVENT AN EMPLOYEE SUSTAINS AN INJURY OR OCCUPATIONAL DISEASE ARISING OUT OF AND IN THE COURSE OF THEIR EMPLOYMENT, THE EMPLOYER SHALL CONTINUE TO MAKE THE SPECIFIED CONTRIBUTIONS TO THE PENSION FUND, COMMENCING WITH THE FIRST FULL GUARANTEED WEEK FOLLOWING THE OCCURRENCE OR ONSET OF SUCH ACCIDENTAL INJURY OR OCCUPATIONAL DISEASE, AND CONTINUING DURING THE PERIOD OF TEMPORARY TOTAL DISABILITY AS THAT PERIOD OF TIME IS DETERMINED BY AGREEMENT BETWEEN THE EMPLOYER AND THE EMPLOYEE, OR UNTIL A SETTLEMENT UNDER THE WORKERS' COMPENSATION ACT IS MADE, OR IN THE EVENT OF NO AGREEMENT OR SETTLEMENT, FOR THE PERIOD OF TIME THAT TEMPORARY TOTAL DISABILITY IS FOUND TO HAVE EXISTED BY THE INDUSTRIAL COMMISSION OF ILLINOIS, BUT IN NO EVENT SHALL THE EMPLOYER BE REQUIRED TO CONTINUE CONTRIBUTIONS UNDER THIS SECTION FOR A NUMBER OF WEEKS GREATER THAN THE WEEKLY INDEMNITY PERIOD PROVIDED BY THE HEALTH AND WELFARE PLAN THEN IN EFFECT.

SEC. 26.6    THE EMPLOYER HEREBY AGREES TO MAKE AVAILABLE TO THE TRUSTEES OF SAID FUND, ANY AND ALL INFORMATION ABOUT HIS EMPLOYEES THAT SAID TRUSTEES MAY REQUIRE IN CONNECTION WITH THE SOUND AND EFFICIENT OPERATION OF SAID FUND.

SEC. 26.7    NO CONTRIBUTIONS TO THE PENSION FUND SHALL BE REQUIRED ON BEHALF OF ANY EMPLOYEE WHO IS ON LEAVE OF ABSENCE, UNLESS THE LEAVE OF ABSENCE IS PURSUANT TO THE FAMILY MEDICAL LEAVE ACT (F.M.L.A.).

SEC. 26.8    THE EMPLOYER HEREBY AGREES TO BE BOUND BY THE AGREEMENT AND DECLARATION OF TRUST CREATING SAID PENSION FUND AND BY ANY FUTURE AMENDMENTS THERETO, OTHER THAN THAT THE TRUSTEES SHALL HAVE NO RIGHT TO AMEND THE TRUST AGREEMENT CHANGING THE AMOUNTS OF CONTRIBUTIONS REQUIRED UNDER THIS CONTRACT, AND HEREBY DESIGNATES AS ITS REPRESENTATIVES ON THE BOARD OF TRUSTEES, SUCH TRUSTEES AS ARE NAMED IN THIS AGREEMENT AND DECLARATION OF TRUST, AS EMPLOYER TRUSTEES, TOGETHER WITH THEIR SUCCESSORS SELECTED IN THE MANNER PROVIDED IN SAID AGREEMENT, AND SAID DECLARATION OF TRUST, AS IT MAY BE AMENDED FROM TIME TO TIME; AND FURTHER AGREES TO BE BOUND BY ALL ACTION TAKEN BY SAID EMPLOYER TRUSTEES PURSUANT TO THE SAID AGREEMENT AND DECLARATION OF TRUST AS AMENDED FROM TIME TO TIME.

SEC. 26.9    FAILURE TO PAY CONTRIBUTIONS WHEN DUE TO THE AFORESAID PENSION FUND SHALL CONSTITUTE A BREACH OF THIS CONTRACT AND SHALL NOT BE SUBJECT TO THE LABOR MANAGEMENT COMMITTEE PROCEDURES AS PROVIDED HEREIN, AND THE UNION SHALL HAVE THE RIGHT TO CALL A WORK STOPPAGE PROVIDING THAT PRIOR THERETO, THE UNION SHALL GIVE THE EMPLOYER TEN (10) DAYS' NOTICE IN WRITING VIA CERTIFIED MAIL; AND THE DELINQUENT EMPLOYER SHALL BE LIABLE DIRECTLY TO   SAID EMPLOYEES FOR ALL BENEFITS SAID EMPLOYEES WOULD HAVE OTHERWISE RECEIVED FROM THE PENSION FUND WERE IT NOT FOR THE EMPLOYER'S DELINQUENCY, INCLUDING COSTS AND REASONABLE ATTORNEY FEES TO ENFORCE PAYMENT THEREOF.

SEC. 26.10    THE OBLIGATION TO MAKE PENSION CONTRIBUTIONS SHALL CONTINUE DURING PERIODS WHEN A NEW COLLECTIVE BARGAINING AGREEMENT IS BEING NEGOTIATED, UNLESS THERE IS A WORK STOPPAGE OR LOCKOUT.

## ARTICLE 27 – SEPARABILITY AND SAVINGS CLAUSE

SECTION 27.1  IF ANY ARTICLE OR SECTION OF THIS CONTRACT OR OF ANY RIDERS THERETO SHALL BE HELD INVALID BY OPERATION OF LAW OR BY ANY TRIBUNAL OF COMPETENT JURISDICTION, OR IF COMPLIANCE WITH OR ENFORCEMENT OF ANY ARTICLE OR SECTION SHOULD BE RESTRAINED BY SUCH TRIBUNAL PENDING A FINAL DETERMINATION AS TO ITS VALIDITY, THE REMAINDER OF THIS CONTRACT AND OF ANY RIDER THERETO, OR THE APPLICATION OF SUCH ARTICLE OR SECTION TO PERSONS OR CIRCUMSTANCES OTHER THAN THOSE AS TO WHICH IT HAS BEEN HELD INVALID, OR AS TO WHICH COMPLIANCE WITH OR ENFORCEMENT OF HAS BEEN RESTRAINED, SHALL NOT BE AFFECTED THEREBY.

SEC. 27.2  IN THE EVENT THAT ANY ARTICLE OR SECTION IS HELD INVALID OR ENFORCEMENT OF OR COMPLIANCE WITH WHICH HAS BEEN RESTRAINED AS ABOVE SET FORTH, THE PARTIES AFFECTED THEREBY SHALL ENTER INTO IMMEDIATE COLLECTIVE BARGAINING NEGOTIATIONS UPON THE REQUEST OF THE UNION OR THE EMPLOYER FOR THE PURPOSE OF ARRIVING AT A MUTUALLY SATISFACTORY REPLACEMENT FOR SUCH ARTICLE OR SECTION DURING THE PERIOD OF INVALIDITY OR RESTRAINT.  IF THE PARTIES DO NOT AGREE ON A MUTUALLY SATISFACTORY REPLACEMENT, EITHER PARTY SHALL BE PERMITTED ALL LEGAL OR ECONOMIC RECOURSE IN SUPPORT OF ITS DEMANDS, NOTWITHSTANDING ANY PROVISION IN THIS CONTRACT TO THE CONTRARY.

## ARTICLE 28 – NON DISCRIMINATION

SECTION 28.1  AS PROVIDED BY FEDERAL, STATE, AND LOCAL LAWS, THE EMPLOYER AND THE UNION AGREE THAT THEY SHALL NOT DISCRIMINATE AGAINST ANY EMPLOYEE ON THE BASIS OF RACE, COLOR, CREED, RELIGION, SEX, NATIONAL ORIGIN, AGE OR DISABILITY.
SEC. 28.2 ALL REFERENCES IN THIS AGREEMENT TO PERSONS OF ONE GENDER SHALL MEAN PERSONS OF EITHER GENDER.

SEC. 28.3 THE EMPLOYER, ITS AGENTS AND SUPERVISORY EMPLOYEES, WILL NOT DISCRIMINATE AGAINST, INTERFERE WITH, RESTRAIN OR COERCE ITS EMPLOYEES BECAUSE OF MEMBERSHIP IN THE UNION OR DULY AUTHORIZED ACTIVITIES OF THE UNION.

## ARTICLE 29 – GRIEVANCE AND ARBITRATION PROCEDURES

SECTION 29.1 IT IS THE PURPOSE OF THIS AGREEMENT TO PROVIDE THE PROCEDURE FOR THE PROMPT AND EQUITABLE ADJUSTMENT OF GRIEVANCES.  GRIEVANCE MEANS A DISPUTE OR CLAIM ARISING UNDER THIS AGREEMENT, AND INVOLVING THE INTERPRETATION OR APPLICATION OF, OR COMPLIANCE WITH ANY PROVISIONS OF THIS AGREEMENT.

SEC. 29.2 THE FOLLOWING THREE (3) STEPS SHALL BE UTILIZED IN THE PROCEDURE FOR CONSIDERATION OF GRIEVANCES:

***STEP 1.*** THE UNION OR ANY EMPLOYEE WHO HAS A GRIEVANCE SHALL DISCUSS THE ISSUE WITH THE IMMEDIATE SUPERVISOR WITHIN THIRTY (30) CALENDAR DAYS AFTER THE UNION OR EMPLOYEE AFFECTED HAS KNOWLEDGE OR SHOULD HAVE HAD KNOWLEDGE OF THE EVENT. THE IMMEDIATE SUPERVISOR SHALL GIVE HIS ANSWER TO THE GRIEVANCE WITHIN SEVEN (7) CALENDAR DAYS AFTER THE DISCUSSION AS STATED ABOVE. HOWEVER, AN EMPLOYEE WHOSE EMPLOYMENT HAS BEEN TERMINATED MUST FILE A WRITTEN GRIEVANCE WITH THE EMPLOYER WITHIN EIGHT (8) CALENDAR DAYS AFTER TERMINATION OF EMPLOYMENT, AND IF HE FAILS TO DO SO, HE SHALL HAVE NO RECOURSE OR BE ENTITLED TO ANY PAYMENT UNDER THIS AGREEMENT.

***STEP 2.*** IF THE GRIEVANCE IS NOT SETTLED IN STEP 1 AND THE EMPLOYEE OR THE UNION DESIRES TO APPEAL, THEN THE GRIEVANCE SHALL BE REDUCED TO WRITING AND SUBMITTED TO THE GENERAL MANAGER OR HIS DESIGNATED REPRESENTATIVE WITHIN TEN (10) CALENDAR DAYS OF THE ANSWER IN STEP 1 ABOVE. THE UNION AND THE DESIGNATED EMPLOYER REPRESENTATIVE SHALL MEET WITHIN THIRTY (30) DAYS THEREAFTER TO DISCUSS THE GRIEVANCE. THE EMPLOYER REPRESENTATIVE SHALL GIVE HIS ANSWER TO THE GRIEVANCE, IN WRITING, WITHIN TEN (10) CALENDAR DAYS AFTER THE MEETING IN STEP 2.

***STEP 3.*** IN THE EVENT THE GRIEVANCE IS NOT SETTLED IN STEP 2, IT MAY THEN BE REFERRED, BY EITHER THE UNION OR THE EMPLOYER, TO ARBITRATION BY GIVING WRITTEN NOTICE TO THE OTHER PARTY OF ITS INTENTION TO DO SO WITHIN THIRTY (30) CALENDAR DAYS OF THE ANSWER IN STEP 2.

THE UNION AND THE EMPLOYER MAY AGREE UPON AN ARBITRATOR OR IF THEY ARE UNABLE TO DO SO, THE MOVING PARTY SHALL REQUEST A PANEL OF CERTIFIED ARBITRATORS FROM THE FEDERAL MEDIATION AND CONCILIATION SERVICE OR THE ILLINOIS DEPARTMENT OF LABOR-DIVISION OF CONCILIATION. THE PARTY STRIKING THE FIRST NAME WILL BE DECIDED BY A TOSS OF A COIN.

THE PARTIES SHALL STRIKE ALTERNATELY, WITH EACH PARTY STRIKING THREE (3) NAMES, AND THE PERSON WHOSE NAME REMAINS SHALL BE THE ARBITRATOR.

SEC. 29.3 THE EMPLOYER AND THE UNION SHALL SHARE THE COST OF THE ARBITRATOR'S EXPENSE EQUALLY. THE DECISION OF THE ARBITRATOR SHALL BE SUBMITTED IN WRITING AND SHALL BE FINAL AND BINDING UPON THE UNION, THE EMPLOYER AND THE EMPLOYEE(S) INVOLVED. IN THE CASE OF DISCHARGE, THE ARBITRATOR SHALL HAVE THE POWER TO SUSTAIN THE DISCHARGE OR TO ORDER REINSTATEMENT OF THE EMPLOYEE, WITHOUT OR WITH A MAKE WHOLE REMEDY. THE JURISDICTION AND AUTHORITY OF THE ARBITRATOR AND HIS OPINION AND AWARD SHALL BE CONFINED EXCLUSIVELY TO THE INTERPRETATION OF THE EXPLICIT PROVISION OR PROVISIONS OF THIS AGREEMENT AT ISSUE BETWEEN THE UNION AND THE EMPLOYER.

THE ARBITRATOR SHALL HAVE NO AUTHORITY TO ADD TO, DETRACT FROM, ALTER, AMEND OR MODIFY ANY PROVISIONS OF THIS AGREEMENT OR IMPOSE ON ANY PARTY HERETO A LIMITATION OR OBLIGATION NOT EXPLICITLY PROVIDED FOR IN THIS AGREEMENT, OR TO ALTER ANY WAGE RATE OR WAGE STRUCTURE. THE ARBITRATOR'S DECISION SHALL BE RENDERED NOT LATER THAN THIRTY (30) CALENDAR DAYS FROM THE DATE OF THE COMPLETION OF THE ARBITRATION HEARING, OR THIRTY (30) DAYS FROM THE DATE BRIEFS ARE REQUIRED, UNLESS EXTENDED BY THE PARTIES.

SEC. 29.4 THE PARTIES AGREE TO FOLLOW EACH OF THE STEPS OUTLINED IN THIS ARTICLE IN THE PROCESSING OF A GRIEVANCE. IF, IN ANY STEP, THE EMPLOYER'S REPRESENTATIVE FAILS TO GIVE HIS ANSWER WITHIN THE TIME LIMITS SET FORTH HEREIN, THEN THE GRIEVANCE SHALL BE AUTOMATICALLY ADVANCED TO THE NEXT STEP IN THE GRIEVANCE PROCEDURE AT THE EXPIRATION OF SUCH TIME LIMIT. ANY STEPS IN THE GRIEVANCE PROCEDURE AND ANY TIME LIMITS ESTABLISHED FOR THE PROCESSING OF GRIEVANCES MAY BE WAIVED OR EXTENDED BY THE MUTUAL AGREEMENT OF THE EMPLOYER AND THE UNION.

SEC. 29.5 IN THE EVENT THE EMPLOYER IS DELINQUENT IN THE PAYMENT OF WAGES OR THE REMITTANCE OF CHECKED-OFF DUES DUE TO THE UNION OR OF CONTRIBUTIONS UNDER THE HEALTH AND WELFARE OR PENSION FUNDS AND THEREAFTER FAILS OR REFUSES TO CORRECT OR REMEDY THE SAID DELINQUENCY WITHIN TEN (10) CALENDAR DAYS AFTER THE UNION NOTIFIES THE EMPLOYER BY CERTIFIED MAIL PROTESTING THE SAID VIOLATIONS, THEN THE GRIEVANCE PROCEDURE HEREINABOVE SET FORTH SHALL HAVE NO APPLICATION TO SUCH CIRCUMSTANCES AND THE UNION SHALL BE PERMITTED ALL LEGAL AND ECONOMIC RECOURSE AGAINST THE EMPLOYER, INCLUDING THE RIGHT TO STRIKE AND PICKET UNTIL SUCH VIOLATIONS ARE CORRECTED, NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT. A DELINQUENT EMPLOYER SHALL BE LIABLE DIRECTLY TO THE SAID EMPLOYEES FOR ALL BENEFITS SAID EMPLOYEES SHOULD HAVE OTHERWISE RECEIVED FROM HEALTH AND WELFARE FUND OR PENSION FUND WERE IT NOT FOR THE EMPLOYER'S DELINQUENCY, INCLUDING COSTS AND REASONABLE ATTORNEY FEES TO ENFORCE PAYMENT THEREOF.

SEC. 29.6 FOR THE DURATION OF THIS AGREEMENT WITH REGARD TO ANY MATTER WITHIN THE SCOPE OF SECTION 29.1 OF THIS ARTICLE, THERE SHALL BE NO LOCKOUT OR STRIKE, EXCEPT AS PROVIDED IN SECTION 29.5 OF THIS ARTICLE, OR FOR REFUSAL TO ABIDE BY AN ARBITRATOR'S DECISION AND AWARD.

SEC. 29.7 PRIOR TO THE INTRODUCTION AND IMPLEMENTATION OF EMPLOYER WORK RULES, THE EMPLOYER SHALL SUBMIT THE WORK RULES TO THE LOCAL UNION FOR FULL REVIEW PRIOR TO CIRCULATION.

IN THE EVENT OF ANY MODIFICATIONS TO EXISTING WORK RULES, THE EMPLOYER SHALL NOTIFY THE UNION PRIOR TO THE EFFECTIVE DATE OF SUCH CHANGES AND THE EMPLOYEES WILL BE LIKEWISE ADVISED BEFORE THE REVISIONS BECOME EFFECTIVE.

SEC. 29.8 *DISCIPLINE AND DISCHARGE:*

A. NO REGULAR EMPLOYEE, AFTER HAVING COMPLETED HIS PROBATIONARY PERIOD, SHALL BE DISCHARGED, SUSPENDED WITHOUT PAY OR SUBJECTED TO OTHER DISCIPLINARY ACTION WITHOUT JUST CAUSE. PROBATIONARY EMPLOYEES MAY BE DISCHARGED OR DISCIPLINED, WITHOUT RECOURSE TO ARTICLE 29.

B. EMPLOYEES ARE SUBJECT TO IMMEDIATE DISCHARGE FOR ENGAGING IN SERIOUS MISCONDUCT, REGARDLESS OF WHETHER THE EMPLOYEE HAS RECEIVED ANY PRIOR DISCIPLINE OR CORRECTIVE ACTION. SERIOUS MISCONDUCT, INCLUDES, BUT IS NOT LIMITED TO, DISHONESTY, ENGAGING IN VIOLENT ACTIONS, INSUBORDINATION, GROSS NEGLIGENCE IN THE PERFORMANCE OF JOB DUTIES, THE POSSESSION OF PERSONAL WEAPONS OR EXPLOSIVES, THE POSSESSION, CONSUMPTION, USE OR DISTRIBUTION OF ALCOHOL OR CONTROLLED SUBSTANCES ON THE EMPLOYER'S PREMISES OR WHILE ON DUTY, TESTING POSITIVE FOR DRUGS OR ALCOHOL PURSUANT TO THE EMPLOYER'S GENERAL POLICY AGAINST DRUGS AND ALCOHOL AND WILLFUL VIOLATION OF THE EMPLOYER'S RULES OF CONDUCT OR OTHER POLICIES AND PROCEDURES.

C. BEFORE DISCHARGING AN EMPLOYEE, EXCEPT AS PROVIDED IN PARAGRAPH 2 ABOVE, THE EMPLOYER SHALL ISSUES ONE (1) VERBAL WARNING NOTICE AND TWO (2) WRITING WARNING NOTICES. FOLLOWING THE SECOND WRITTEN NOTICE FOR THE SAME OR SIMILAR OFFENSE WITHIN INDIVIDUAL EMPLOYER POLICY, THE EMPLOYEE MAY BE DISCIPLINARY LAID-OFF FOR NOT MORE THAN FIVE (5) WORKING DAYS, OR DISCHARGED.

D. WARNING NOTICES SHALL BE REMOVED FROM AN EMPLOYEE'S FILE EIGHTEEN (18) MONTHS FROM THE DATE OF ISSUANCE. ALL CURRENT WARNING NOTICES SHALL BE REMOVED AFTER EIGHTEEN (18) MONTHS.

E. WHEN A REGULAR EMPLOYEE IS DISCIPLINED OR DISCHARGED, THE REASONS FOR THAT ACTION SHALL BE GIVEN TO THE EMPLOYEE IN WRITING. WHEN AN EMPLOYEE IS DISCHARGED OR DISCIPLINED, COPIES OF THE WRITTEN DISCHARGED OR DISCIPLINARY NOTICE SHALL BE SENT TO THE OFFICE OF THE UNION WITHIN SEVENTY-TWO (72) HOURS OF THE DISCHARGE. AN EMPLOYEE WHO IS GIVEN A WRITTEN COUNSELING OR WARNING SHALL BE REQUIRED TO SIGN THAT DOCUMENT FOR PURPOSES OF ACKNOWLEDGING RECEIPT, ALTHOUGH BY SIGNING THE WRITTEN COUNSELING OR WARNING, THE EMPLOYEE SHALL NOT BE DEEMED TO BE AGREEING WITH THE CONTENTS OF THE WRITTEN COUNSELING OR WARNING.

F. IN ANY DISCIPLINE OR DISCHARGE CASE, EVIDENCE OF COMPARATIVE TREATMENT OF EMPLOYEES MAY NOT BE USED TO CONTEST THE PROPRIETY OF THE DISCIPLINE OR DISCHARGE, UNLESS THE UNION DEMONSTRATES THAT A DIFFERENT OR NO DISCIPLINE WAS IMPOSED UPON ANOTHER EMPLOYEE UNDER CIRCUMSTANCES THAT ARE SUBSTANTIALLY THE SAME AS INVOLVED IN THE CASE AT ISSUE.

G. IN ANY DISCIPLINE OR DISCHARGE CASE, EVIDENCE OF ALLEGED VIOLATION OF PRIOR INFRACTIONS BY THE EMPLOYEE MAY NOT BE USED TO CONTEST THE PROPRIETY OF ANY DISCIPLINE OR DISCHARGE, SO LONG AS THE EMPLOYER HAD, PRIOR TO THE IMPOSITION OF THE DISCIPLINE OR DISCHARGE, SPECIFICALLY ADVISED THE EMPLOYEE IN WRITING THAT THE INVOLVED CONDUCT WOULD NO LONGER BE TOLERATED AND THAT ANY REPETITION OF THE CONDUCT COULD RESULT IN DISCIPLINARY ACTION OF THE TYPE AND TO THE DEGREE OF THAT WHICH WAS IMPOSED.

*EFFECTIVE MAY 1, 2006*, A COMMISSION ROUTE SALES REPRESENTATIVE WHOSE KEY PERFORMANCE INDICATOR ("KPI") SCORE IS BELOW FIFTY (50) SHALL BE SUBJECT TO APPROPRIATE DISCIPLINARY ACTION.

THE EMPLOYER AGREES NOT TO DISCIPLINE EMPLOYEES FOR A PERIOD OF SIX (6) MONTHS FOLLOWING IMPLEMENTATION OF THE NEW WAGE/KPI RANGES.

*EFFECTIVE MAY 1, 2007,* A COMMISSION ROUTE SALES REPRESENTATIVE WHOSE KPI SCORE IS BELOW FIFTY-FIVE (55) SHALL BE SUBJECT TO APPROPRIATE DISCIPLINARY ACTION.

*EFFECTIVE MAY 1, 2008*, A COMMISSION ROUTE SALES REPRESENTATIVE WHOSE KPI SCORE IS BELOW SIXTY (60) SHALL BE SUBJECT TO APPROPRIATE DISCIPLINE. THE PROVISIONS OF THIS SECTION SHALL APPLY SO LONG AS A COMMISSION ROUTE SALES REPRESENTATIVE, UPON WHO DISCIPLINE IS IMPOSED, AND HAS BEEN PROVIDED TRAINING WITH RESPECT TO PERFORMANCE STANDARDS THAT ARE CONSIDERED IN CALCULATING THE KPI.

SEC. 29.9 *GENERAL RULES OF CONDUCT:*

TO ASSIST WITH THE EFFICIENT OPERATION OF LECHNER AND SONS AND TO INSURE THE SAFETY AND WELL BEING OF THOSE AT LECHNER AND SONS, THE FOLLOWING RULES OF CONDUCT ARE IN FORCE. THE RULES OF CONDUCT ARE NOT INTENDED TO RESTRICT THE LEGITIMATE RIGHTS AND ACTIVITIES OF EMPLOYEES, BUT RATHER ARE INTENDED TO HELP EMPLOYEES BY DEFINING AND PROTECTING THE RIGHTS AND SAFETY OF ALL PERSONS WORKING, ATTENDING OR VISITING LECHNER AND SONS. EMPLOYEES ARE EXPECTED TO ACQUAINT THEMSELVES WITH THESE RULES AS WELL AS WITH OTHER WORK RULES SPECIFIC TO THEIR DEPARTMENT. THE CONDUCT DEFINED BELOW (AND SPECIFIC DEPARTMENT WORK RULES) WILL SUBJECT EMPLOYEES TO CORRECTIVE ACTION, INCLUDING SUSPENSION OR TERMINATION, DEPENDING UPON THE SEVERITY OF THE VIOLATION. VIOLATIONS OF POLICY INCLUDE, BUT ARE NOT LIMITED TO:

A. FALSIFICATION OR UNAUTHORIZED ALTERING, DELETION OR OMISSIONS OF RECORDS, EMPLOYMENT APPLICATIONS, TIME SHEETS, TIME CARDS, WORK REPORTS, DEPARTMENTAL RECORDS, OR OTHER UNIVERSITY DOCUMENTS.

B. INTENTIONAL UNAUTHORIZED DISCLOSURE OF CONFIDENTIAL OR PRIVILEGED INFORMATION.

C. UNAUTHORIZED USE AND / OR POSSESSION OF INTOXICATING BEVERAGES, NARCOTICS OR DRUGS ON COMPANY PREMISES; OR REPORTING TO WORK UNDER THE INFLUENCE OF INTOXICATING BEVERAGES, NARCOTICS OR DRUGS, BEING IN AN UNFIT CONDITION TO WORK.

D. THREATENING, INTIMIDATING OR HARASSING OTHERS IN THE WORKPLACE OR ON COMPANY PREMISES.

E. CARRYING WEAPONS ON COMPANY PREMISES UNLESS SPECIFICALLY PREAUTHORIZED TO DO SO.

F. BEHAVING IN AN OVERTLY DISCOURTEOUS, ABUSIVE OR DISRESPECTFUL MANNER TOWARD A FELLOW EMPLOYEE, SUPERVISOR, STUDENT OR ANY OTHER MEMBER OF THE LECHNER AND SONS ORGANIZATION.

G. STEALING, UNAUTHORIZED REMOVAL, USE, LOSS, DAMAGE, OR DESTRUCTION OF PROPERTY BELONGING TO THE COMPANY, EMPLOYEES, OR VISITORS OF THE COMPANY.

H. REFUSAL TO FOLLOW A WORK DIRECTIVE, CARRY OUT ASSIGNED JOB DUTIES OR INSUBORDINATION TOWARD A MANAGER, SUPERVISOR OR MANAGEMENT REPRESENTATIVE.

I. DEMONSTRATING ANY CONDUCT OR BEHAVIOR, WHICH CONSTITUTES SEXUAL HARASSMENT, RACIAL ABUSE OR DISCRIMINATION.

J. FIGHTING, GAMBLING, USE OF OBSCENITIES OR ABUSIVE LANGUAGE AT WORK.

K. VIOLATING OR IGNORING WORKPLACE SAFETY STANDARDS AND EXPECTATIONS.

L. UNAUTHORIZED OR MISUSE OF ELECTRIC RESOURCES OR EQUIPMENT.

THE EMPLOYER AGREES THAT ANY AND ALL DISCIPLINARY ACTIONS SHALL BE SUBJECT TO THE GRIEVANCE PROCEDURE AS DEFINED AND IN ACCORDANCE WITH ARTICLE 29 OF THIS AGREEMENT.

## ARTICLE 30 – EMPLOYEE'S BOND

SECTION 30.1 IT IS AGREED BY AND BETWEEN THE UNION AND THE EMPLOYER THAT THE EMPLOYER MAY REQUIRE THE EMPLOYEES TO INDEMNIFY THE EMPLOYER AGAINST SUCH EMPLOYEE'S CONVERSION OF COLLECTIONS TO HIS OWN PERSONAL USE, AND FOR OTHER DEFAULTS TO BE SPECIFIED IN SUCH BOND. THE SECURITY MAY BE IN THE FORM OF A BOND SECURED BY A CORPORATE SURETY, THE COST THEREOF TO BE BORNE BY THE EMPLOYER.

## ARTICLE 31 – BULLETIN BOARD ACCESS

SECTION 31.1.  THE EMPLOYER SHALL PROVIDE DESIGNATED SPACE FOR POSTING NOTICES FALLING WITHIN THE FOLLOWING CATEGORIES:

1. UNION MEETINGS;
2. UNION APPOINTMENTS;
3. UNION ELECTIONS;
4. RESULT OF UNION ELECTIONS;
5. INTERNATIONAL UNION CORRESPONDENCE AND REQUIRED POSTINGS.

NOTICES TO BE POSTED SHALL BE SIGNED BY A UNION OFFICIAL.  ANY NOTICES OTHER THAN THOSE SPECIFICALLY ENUMERATED ABOVE SHALL BE SUBMITTED TO MANAGEMENT FOR APPROVAL PRIOR TO POSTING.  THE BULLETIN BOARD SHALL NOT BE USED BY THE UNION OR ITS MEMBERS FOR DISSEMINATING PROPOSALS, POLITICAL MATERIALS, INFLAMMATORY MATERIALS OR MATERIALS DEROGATORY TO THE EMPLOYER.

## ARTICLE 32 – D.R.I.V.E. AUTHORIZATION AND DEDUCTION

SECTION 32.1 THE EMPLOYER AGREES TO DEDUCT FROM THE PAYCHECK OF ALL EMPLOYEES COVERED BY THIS AGREEMENT VOLUNTARY CONTRIBUTIONS TO DEMOCRAT REPUBLICAN INDEPENDENT VOTER EDUCATION (D.R.I.V.E.).  D.R.I.V.E. SHALL NOTIFY THE EMPLOYER OF THE AMOUNTS DESIGNATED BY EACH CONTRIBUTING EMPLOYEE THAT ARE TO BE DEDUCTED FROM HIS/HER PAYCHECK ON A WEEKLY BASIS FOR ALL WEEKS WORKED.  THE PHRASE "WEEKS WORKED" EXCLUDES ANY WEEK OTHER THAN A WEEK IN WHICH THE EMPLOYEE EARNED A WAGE.  THE EMPLOYER SHALL TRANSMIT TO D.R.I.V.E. NATIONAL HEADQUARTERS ON A MONTHLY BASIS, IN ONE (1) CHECK, THE TOTAL AMOUNT DEDUCTED ALONG WITH THE NAME OF EACH EMPLOYEE ON WHOSE BEHALF A DEDUCTION IS MADE, THE EMPLOYEE'S SOCIAL SECURITY NUMBER AND THE AMOUNT DEDUCTED FROM THE EMPLOYEE'S PAYCHECK.

## ARTICLE 33 – MILITARY LEAVE

SECTION 33.1 IT IS AGREED BY AND BETWEEN THE PARTIES TO THIS AGREEMENT THAT THE EMPLOYER SHALL GIVE THE BENEFITS OF THE CURRENT FEDERAL MILITARY LEAVE LAW AND TO BARGAINING UNIT EMPLOYEES COVERED BY THE AGREEMENT.

## ARTICLE 34 – UNIFORM DRUG POLICY

SECTION 34.1 THE EMPLOYER HAS THE RIGHT TO ESTABLISH AND IMPLEMENT A UNIFORM DRUG POLICY, PROVIDED THAT IT FIRST SUBMITS SUCH POLICY TO THE UNION FOR REVIEW AND APPROVAL.

## ARTICLE 35 – PROTECTION OF RIGHTS

SECTION 35.1 IT SHALL NOT BE A VIOLATION OF THIS AGREEMENT AND IT SHALL NOT BE CAUSE FOR DISCHARGE OR DISCIPLINARY ACTION IN THE EVENT AN EMPLOYEE REFUSES TO ENTER UPON ANY PROPERTY INVOLVED IN A LAWFUL PRIMARY LABOR DISPUTE, OR REFUSES TO GO THROUGH OR WORK BEHIND ANY LAWFUL PRIMARY PICKET LINE OF THE UNION PARTY TO THIS AGREEMENT, INCLUDING LAWFUL PRIMARY PICKET LINES AT THE EMPLOYER'S PLACE OF BUSINESS.

SECTION 35.2 LAWFUL PRIMARY PICKETS MUST BE APPROVED AND SANCTIONED BY TEAMSTERS JOINT COUNCIL NO. 25 PRIOR TO ANY WORK STOPPAGE.

## ARTICLE 36 – EFFECTIVE DATE

SECTION 36.1 THE WAGE SCALES PROVIDED FOR IN THIS AGREEMENT SHALL BECOME EFFECTIVE MAY 1, 2006. UPON THE FIRST PAY-DAY FOLLOWING THE EXECUTION OF THIS AGREEMENT ALL MONIES HERETOFORE ACCRUING REVERTING TO MAY 1, 2006 SHALL BE PAID TO ALL EMPLOYEES COVERED BY THIS AGREEMENT.

## ARTICLE 37 – TERM OF AGREEMENT

SECTION 37.1 THIS AGREEMENT SHALL GO INTO EFFECT MAY 1, 2006 AND CONTINUE IN FULL FORCE AND EFFECT THROUGH APRIL 30, 2010.  IT IS FURTHER UNDERSTOOD AND AGREED THAT ON MAY 1, 2010, THIS AGREEMENT SHALL BE AUTOMATICALLY RENEWED FOR ONE (1) YEAR FROM SUCH DATE AND THEREAFTER UPON EACH ANNIVERSARY OF SAID DATE, WITHOUT ANY FURTHER ACT OF ANY OF THE PARTIES HERETO, PROVIDED THAT EITHER PARTY MAY MODIFY OR TERMINATE THIS AGREEMENT AT MIDNIGHT APRIL 30, 2010, OR ON ANY OTHER ANNIVERSARY DATE THEREAFTER, BY GIVING SIXTY (60) DAYS PRIOR WRITTEN NOTICE TO THE OTHER SIGNATORY PARTY OF ITS INTENTION TO SO MODIFY OR TERMINATE SAME.

SEC. 37.2 IN THE EVENT PROPER NOTICE IS SERVED, NEGOTIATIONS BETWEEN THE UNION AND THE EMPLOYER SHALL COMMENCE WITHIN THIRTY (30) DAYS AFTER SUCH NOTICE HAS BEEN SERVED.

IN WITNESS WHEREOF THE PARTIES HAVE HEREUNTO SET THEIR HANDS THIS
_____DAY OF _____, 2007.


*AGREED:*


*FOR THE EMPLOYER:*

LECHNER AND SONS
420 KINGSTON DR.
MT. PROSPECT, IL 60056

*FOR THE UNION:*

EXCAVATING, GRADING, ASPHALT,
PRIVATE SCAVENGERS, AUTOMOBILE
SALESROOM GARAGE ATTENDANTS,
LINEN AND LAUNDRY DRIVERS
LOCAL UNION NO. 731, AFFILIATED
WITH THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS


BY:_____
      Eric Lechner


Title_____

BY:_____
     Terrence J. Hancock, President


BY:_____
     John J. Lisner Secretary-Treasurer


---

▼ *EMPLOYER CONTACT INFORMATION:*


_____*ERIC LECHNER*_____
CONTACT PERSON


_____*(847) 789-3800*_____
AREA CODE AND TELEPHONE NUMBER


_____*(847) 789-3861*_____
FACSIMILE NUMBER

LAW OFFICES

# DOWD, BLOCH & BENNETT

8 SOUTH MICHIGAN AVENUE • 19TH FLOOR

CHICAGO, ILLINOIS 60603-3315

PHONE (312) 372-1361

FAX (312) 372-6599

J. PETER DOWD
ROBERT E. BLOCH
BARRY M. BENNETT
ROBERT S. CERVONE
RONALD M. WILLIS
—
MICHELE M. REYNOLDS
JUSTIN J. LANNOYE
LAKISHA M. KINSEY-SALLIS
STEVEN W. JADOS

By telefax and U.S. mail
(847-789-3861)

July 3, 2007

Mr. Eric Lechner
Lechner and Sons
420 Kingston Drive
Mt. Prospect, IL   60056

Re: Grievance

Dear Mr. Lechner:

This office represents Teamsters Local 731 and I write at its direction.

Teamsters Local 731 grieves Lechner and Sons' refusal to reinstate its Local 731-represented employees who honored UNITE's picket line at its place of business. The Company's conduct violates Articles 3, 5, 29, 35 and all other applicable provisions of the labor contract.

Local 731 demands that the employees, who have unconditionally offered to return to work, be reinstated and made whole for all losses arising from the Company's contract violations.

Local 731 requests immediate arbitration of this grievance.

Sincerely,

Robert E. Bloch

REB/ms
cc (via telefax):    T.J. Hancock
                     Mark Stolzenburg

**EXHIBIT**

2



LAW OFFICES

# DOWD, BLOCH & BENNETT

8 SOUTH MICHIGAN AVENUE • 19TH FLOOR

CHICAGO, ILLINOIS 60603-3315

PHONE (312) 372-1361

FAX (312) 372-6599

J. PETER DOWD
ROBERT E. BLOCH
BARRY M. BENNETT
ROBERT S. CERVONE
RONALD M. WILLIS
———
MICHELE M. REYNOLDS
JUSTIN J. LANNOYE
LAKISHA M. KINSEY-SALLIS
STEVEN W. JADOS

<u>By telefax and U.S. mail</u>
(312-467-9479)

July 11, 2007

Mr. Michael Klupchak
Laner, Muchin, Dombrow, Becker,
  Levin & Tominberg
515 N. State, 28th floor
Chicago, IL  60610

Re: Teamsters Local 731 and
    Lechner and Sons

Dear Mr. Klupchak:

This responds to your July 10 letter.

The Union disputes your claim that the no unconditional offer to return to work has been made, but to preserve its position in this matter Local 731 renews its offer to Lechner and Sons on behalf of all drivers unconditionally to return to work.

Lechner and Sons has violated the employment rights of its long-serving driver work because they would not cross another union's picket line. In addition to the other contract violations mentioned in the July 3 grievance, such conduct violates Article 28 because it is discriminatory against the Union-represented drivers for engaging in authorized Union activities. If Lechner and Sons will not reconsider its conduct here, then Local 731 demands to arbitrate its July 3 grievance immediately. If you insist on convening any of the preliminary grievance steps relating to the Union's July 3 grievance, please advise me. Otherwise, Local 731 requests immediate arbitration of the grievance. Please contact me within the next few days to advise of your intentions.

Sincerely,

Robert E. Bloch

REB/ms
cc:   T.J. Hancock

**EXHIBIT**

3



*LANER* ✓ *MUCHIN*™

Laner Muchin Dombrow Becker Levin and Tominberg, Ltd.

July 10, 2007

<u>VIA FACSIMILE</u> -- 312.372.6599

Mr. Robert Bloch
Dowd, Bloch & Bennett
8 South Michigan Avenue, 19th Floor
Chicago, Illinois 60603

     Re:   **Lechner and Sons**

Dear Mr. Bloch:

     As you are undoubtedly aware, this Firm represents Lechner and Sons in its collective bargaining negotiations with Teamsters Local 731. Accordingly, please direct all further correspondence or communications to the undersigned, or to Mark Stolzenburg of this office.

     This letter is in response to your July 3, 2007 letter to Eric Lechner, which was characterized as a "grievance." The information that you received from your client is incorrect. At no time has Teamsters Local 731 ever presented Lechner and Sons with an unconditional offer for its striking employees to return to work, nor have any of the striking employees done so on their own behalf. Although Section 35 of the collective bargaining agreement may offer protections from termination under the no-strike clause, none of these employees were discharged; rather, they were permanently replaced. Accordingly, those individuals who chose to engage in economic activity protected by Section 7 of the National Labor Relations Act, such as striking or picketing, will be placed on a preferential hiring list in accordance with well-established NLRB precedent.

     Please contact me with any questions.

               Sincerely,

               Michael Klupchak

MLS:m

**EXHIBIT**
4

LAW OFFICES

# DOWD, BLOCH & BENNETT

8 SOUTH MICHIGAN AVENUE • 19TH FLOOR

CHICAGO, ILLINOIS 60603-3315

PHONE (312) 372-1361

FAX (312) 372-6599

J. PETER DOWD
ROBERT E. BLOCH
BARRY M. BENNETT
ROBERT S. CERVONE
RONALD M. WILLIS

MICHELE M. REYNOLDS
JUSTIN J. LANNOYE
LAKISHA M. KINSEY-SALLIS
STEVEN W. JADOS

<u>By telefax and U.S. mail</u>
(312-467-9479)

July 11, 2007

Mr. Michael Klupchak
Laner, Muchin, Dombrow, Becker,
  Levin & Tominberg
515 N. State, 28th floor
Chicago, IL 60610

Re: Teamsters Local 731 and
     Lechner and Sons

Dear Mr. Klupchak:

This responds to your July 10 letter.

The Union disputes your claim that the no unconditional offer to return to work has been made, but to preserve its position in this matter Local 731 renews its offer to Lechner and Sons on behalf of all drivers unconditionally to return to work.

Lechner and Sons has violated the employment rights of its long-serving driver work because they would not cross another union's picket line. In addition to the other contract violations mentioned in the July 3 grievance, such conduct violates Article 28 because it is discriminatory against the Union-represented drivers for engaging in authorized Union activities. If Lechner and Sons will not reconsider its conduct here, then Local 731 demands to arbitrate its July 3 grievance immediately. If you insist on convening any of the preliminary grievance steps relating to the Union's July 3 grievance, please advise me. Otherwise, Local 731 requests immediate arbitration of the grievance. Please contact me within the next few days to advise of your intentions.

Sincerely,

Robert E. Bloch

REB/ms
cc:    T.J. Hancock

EXHIBIT
5



*LANER      MUCHIN* ™

Laner Muchin Dombrow Becker Levin and Tominberg, Ltd.

September 12, 2007

Mr. Robert Bloch
Dowd, Bloch & Bennett
8 South Michigan Avenue
19th Floor
Chicago, IL 60603

  Re: ***Lechner and Sons/IBT Local 731***

Dear Mr. Bloch:

  I am writing in response to your request to process the "grievance" which you filed on behalf of the Union, in a letter dated July 3, 2007, to Eric Lechner.  As I explained in prior discussions, the Employer does not believe that this case is appropriate for arbitration.  However, in response to your request to forward this case to arbitration, the Employer will agree to do so, but solely regarding the issue of arbitrability.  The basis for the Employer's position that this case is not arbitrable is set forth below.

  First, under Step 1, Article 29 of the parties' contract, the grievance and arbitration procedures require that, "an employee whose employment has been terminated must file a written grievance with the Employer within eight (8) calendar days after termination of employment, and if he fails to do so, he shall have no recourse or be entitled to any payment under this Agreement."  In this case, the Union's contention is that the employees were discharged contrary to the provisions of Article 35 of the collective bargaining agreement, which states that "it shall not be a violation of this Agreement and it shall not be cause for discharge . . . in the event an employee refuses to enter upon any property involved in a lawful primary labor dispute . . .."  However, no employee has ever filed any grievance challenging such an alleged termination.  To the contrary, your July 3, 2007 grievance letter, does not raise any such discharge claim, but rather, alleged a "refusal to reinstate."  Thus, on its face, the alleged discharges are not arbitrable grievances under the provisions of this contract, since the explicit terms of Step 1 of Article 29 were not followed.

  In addition to the foregoing, Article 29, Section 29.4, requires the parties to file the steps outlined for processing the grievance.  However, in this case, the demand for arbitration was the one and only step invoked by the Union, as set forth in your aforementioned letter.

**EXHIBIT**

tabbies®

6

*LANER*   *MUCHIN* SM

Laner Muchin Dombrow Becker Levin and Tominberg, Ltd.

Mr. Robert Bloch
September 12, 2007
Page 2


Finally, the Union's reliance upon Article 5 and Article 35, both of which are cited as the basis of the grievance in your July 3, 2007 letter, is misplaced. First, Article 5 sets forth explicit procedures that are to be followed by the Employer when an employee is discharged, including giving written notices to the Union. In this case, none of these procedures were followed since the employees were never discharged. In fact, any claim that these employees were discharged is further undermined by the fact that one of the striking employees has already been returned to work, pursuant to his rights as an economic striker, which is entirely inconsistent with the allegation that he was discharged. Furthermore, the fact that no such discharge occurred makes Article 35, on its face, inapplicable to the instant situation. Thus, there is no substantive issue to arbitrate under these Articles.

For the foregoing reasons, the Employer believes this case is clearly not arbitrable, but is willing to present that narrow question to an arbitrator for resolution.

Sincerely,

Michael Klupchak

MK:pam

LAW OFFICES
# DOWD, BLOCH & BENNETT

8 SOUTH MICHIGAN AVENUE • 19TH FLOOR

CHICAGO, ILLINOIS 60603-3315

PHONE (312) 372-1361

FAX (312) 372-6599

J. PETER DOWD
ROBERT E. BLOCH
BARRY M. BENNETT
ROBERT S. CERVONE
RONALD M. WILLIS
—
MICHELE M. REYNOLDS
JUSTIN J. LANNOYE
LAKISHA M. KINSEY-SALLIS
STEVEN W. JADOS

By telefax and U.S. mail
(312-467-9479)

September 25, 2007

Mr. Michael Klupchak
Laner, Muchin, Dombrow, Becker,
   Levin & Tominberg
515 N. State, 28th floor
Chicago, IL  60610

Re: Teamsters Local 731 and
Lechner & Sons
FMCS No. 070803-59156-A

Dear Mr. Klupchak:

Lechner & Sons raises substantive and procedural objections to arbitrability of the above-captioned grievance in your September 12 letter. Local 731 acknowledges your right to raise these contentions, no matter how frivolous they are. However, you do not have the right to direct how the arbitrator chooses to hear these objections. The arbitration concerns the Union's grievance, not just the Company's objections to the grievance. The arbitrator might conduct a separate hearing on arbitrability or, more likely, will hear all issues as part of a single hearing. This is the arbitrator's decision, not yours.

As you know, the FMCS issued a panel of arbitrators in this matter on August 3, 2007. Please contact me at your earliest convenience to select an arbitrator from the panel.

Sincerely,

Robert E. Bloch

REB/ms
cc:    T.J. Hancock

EXHIBIT
7