**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **EXCAVATING, GRADING, ASPHALT, PRIVATE SCAVENGERS, AUTOMOBILE SALESROOM GARAGE ATTENDANTS AND LINEN AND LAUNDRY DRIVERS, LOCAL NO. 731, INTERNATIONAL BROTHER-HOOD OF TEAMSTERS,** )<br>)<br>)<br>)<br>)<br>)<br>) | |
| **Plaintiff,** ) | **Case No.  07 C 6318** |
| ) | **Chief Judge Holderman** |
| **v.** ) | |
| ) | **Magistrate Judge Cole** |
| **LECHNER AND SONS,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM ON BEHALF OF LOCAL 731 IN
SUPPORT OF PETITION TO COMPEL ARBITRATION**

**INTRODUCTION**

Plaintiff Excavating, Grading, Asphalt, Private Scavengers, Automobile Salesroom

Garage Attendants and Linen and Laundry Drivers, Local No. 731, International Brotherhood of

Teamsters ("Local 731") sues Lechner and Sons ("Lechner") to obtain an order compelling

Lechner to cooperate in submitting a grievance for arbitration.  The Union asserts jurisdiction

under Section 301 of the Labor-Management Act, 29 U.S.C. § 185, and under 28 U.S.C. § 1331.

In accord with the procedures of the Federal Arbitration Act, 9 U.S.C. § § 1, 4, the Union has

petitioned the Court, on the requisite five days' notice, to hear the parties and, if it is satisfied

that there is an agreement for arbitration and that Lechner has not complied with the agreement,

1

to issue an order directing Lechner to proceed to arbitration; or, if the Court determines there is

an issue as to the arbitration agreement or the failure to perform, to proceed summarily to trial.

Local 731 submits this memorandum, accompanied by a declaration and exhibits, in support of

its petition.


## STATEMENT OF FACTS

As shown in its Motion for Petition to Compel Arbitration and the accompanying

declaration and exhibits, Local 731 and Lechner are parties to a collective bargaining agreement

("CBA").  At the time the CBA was fully executed in late June 2007, most Local 731-represented

employees were honoring a picket line established at Lechner's facility  in sympathy with

striking workers represented by another labor organization.

On or about July 2, 2007, the other union's strike ended and the Local 731-represented

employees requested to return to work, but Lechner refused to reinstate them.  Local 731 filed a

grievance on July 3, 2007, in which it grieved  "Lechner and Sons' refusal to reinstate its Local

731-employees who honored [the other union's] picket line at its place of business."  The

Union's correspondence concerning the grievance identifies the following CBA articles allegedly

violated, which articles include the cited provisions, and "all other applicable provisions" of the

CBA:

Article 35 - Protection of Rights

35.1    It shall not be a violation of this Agreement and it shall not be
cause for discharge or disciplinary action in the event an employee
refuses to enter upon any property involved in a lawful primary
labor dispute . . . , including lawful primary picket lines at the
Employer's place of business.

2

Article 3 - Union Recognition

3.1    The Employer recognizes the Union as the sole and exclusive bargaining
       representative for route salesmen hereinafter referred to as "employees",
       within the jurisdiction of the Union.

Article 5 - Discharge/Suspension and Warning Notices

5.1    No employee shall be suspended without pay, discharged or given a
       written warning without just cause.

Article 28- Non-Discrimination

28.3   The Employer, its agents and supervisory employees, will not discriminate
       against, interfere with, restrain or coerce its employees because of
       membership in the Union or duly authorized activities of the Union.

Article 29 - Grievance and Arbitration procedures

29.8   No regular employee, after having completed his probationary period, shall
       be discharged, suspended without pay or subjected to other disciplinary
       action without just cause.

Article 29 of the CBA outlines the process for advancing grievances to arbitration.  It

defines a grievance in section 29.1 as "a dispute or claim arising under this Agreement, and

involving the interpretation or application of, or compliance with any provision of this

Agreement."  This section further provides for processing of grievances, culminating in final and

binding arbitration of any non-settled grievance.  In addition, CBA Article 5 section 5.1 also

provides that "any and all disciplinary action shall be subject to the grievance procedure as

defined and in accordance with the grievance procedure as stated in Article 29 of the

Agreement."  Hancock declaration Exhibit 1.

Lechner acknowledges its refusal to select an arbitrator and proceed to arbitration. See Lechner's Answer to Complaint at ¶ 17.

In its correspondence to the Union, Lechner has asserted various reasons for refusing to arbitrate the grievance, principally that: 1) the Local 731-represented employees were not discharged but were permanently replaced; 2) the affected employees failed to file grievances in accordance with Article 29; and 3) the Union failed to process the grievance through the intermediate steps preceding arbitration. Hancock declaration Exhibits 4 and 6.

## ARGUMENT

### I.    SECTION 4 OF THE FEDERAL ARBITRATION ACT PROVIDES AN APPROPRIATE MECHANISM FOR PRESENTING THIS MATTER TO THE COURT ON AN EXPEDITED BASIS.

Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, 4, is an appropriate mechanism for Local 731 to present this matter to the Court for resolution on an expedited basis. FAA Section 4 permits a party aggrieved by the refusal of a party with which it has a written arbitration agreement to petition a district court for an order compelling arbitration, and to submit its application on five days' notice.[1]

---

[1] The FAA Sec. 4 allows for commencement of an action by petition rather than complaint. But in view of Fed. R. Civ. Pro. 3 and 7(a), which require that civil actions be commenced only by complaint, plaintiff has initiated this action through complaint. Further, as required under Fed. R. Civ. Pro. 7(b)(1), plaintiff has filed its petition in the form of a motion and seeks that its petition be heard pursuant to the procedures established by the FAA.

There was disagreement in the past as to whether the FAA applies to arbitrations arising from collective bargaining agreements. In *Pryner v. Tractor Supply Co.*, 109 F.3d 354 (7th Cir. 1997), the Seventh Circuit found the FAA is applicable for at least some purposes to arbitrations arising from labor contracts. Section 1 of the FAA, 9 U.S.C. § 1, states that the statute does not "apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." That wording raised questions as to whether the exclusion applied to employment agreements covering transportation workers only, or was meant to exclude agreements covering any workers in "interstate commerce" as that term is broadly applied in many other contexts. In *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), the Supreme Court ruled that the exclusion in § 1 of the FAA applies only to transportation workers.

The Seventh Circuit concluded that the FAA is applicable in the context of labor arbitrations in *Smart v. IBEW, Local 702*, 315 F.3d 721, 724-25 (7th Cir. 2002). It noted that Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, is not simply a jurisdictional and procedural statute, but has been recognized as forming the basis for creation of the federal law of labor contracts; and it explained that because the FAA is not particularly directed at such contracts, any conflicts between the two statutes in the context of labor arbitrations would be resolved in favor of § 301. The court went on to state that "[w]here there is no conflict, however, and the FAA provides a procedure or remedy not found in section 301 but does not step on section 301's toes, then, as in *Pryner*, we apply the Federal Arbitration Act. *See also Int'l. Brhd. of Electrical Workers, Local 21 v. Illinois Bell Telephone Company*, 491 F.3d 685 (7th Cir. 2007) (affirming an order compelling arbitration pursuant to the Federal Arbitration Act); *Teamsters National Automotive Transporters Industry Negotiating Committee v. Troha*,

328 F.3d 325 (7th Cir. 2003), *cert. den.*, 2003 U. S. LEXIS 6096 (2003) (referring to the FAA for guidance in providing a mechanism for enforcement of subpoenas against non-signatories in labor arbitrations).

Section 4 of the FAA permits a party aggrieved by the refusal of a party with which it has a written arbitration agreement to petition a district court for an order compelling arbitration, and to submit its application on five days' notice, which is what Local 731 has done here.  It is apparent from the mechanism for allowing a petition of this sort to be presented on five days' notice that it was intended to uphold the promise of arbitration as providing a relatively speedy mechanism for resolving disputes, and the courts have consistently recognized this policy.  "[W]e not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts."  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967).  *See also Tamari v. Bache & Co.*, 565 F.2d 1194, 1202 (7th Cir. 1977); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1267 (7th Cir. 1976).

The goal of advancing arbitration in a timely manner is just as applicable, if not more so, in the labor relations setting.  The courts have consistently recognized that federal labor policy supports the "relatively rapid final resolution of labor disputes."  *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 168 (1983).  *See also Production and Maintenance Employees' Local 504 v. Roadmaster Corp.*, 916 F.2d 1161, 1163 (7th Cir. 1990), where the court stated that "[a]rbitration will not work if legal contests are its bookends:  a suit to compel or prevent arbitration, the arbitration itself, and a suit to enforce or set aside the award" and explained that "[r]eluctance to see the benefits of arbitration smothered by the costs and delay of

litigation explains the increasing tendency of courts to order a party feebly opposing arbitration (or its outcome) to pay the winner's legal fees."

The affected employees covered by Local 731's grievance have been denied employment by Lechner since July 2007. Both the essential purposes and the benefits of arbitration are facilitated here by rapid resolution of this dispute.

## II.    THE COURT SHOULD GRANT LOCAL 731'S PETITION.

### A.    Thoroughly established authority establishes an overwhelming presumption of substantive arbitrability.

Unless the parties' contract provides to the contrary, the question of substantive arbitrability – whether there is an agreement to arbitrate the dispute raised by the grievance – is reserved for the court rather than for the arbitrator. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986). In answering this question, however, the courts apply a presumption of arbitrability whose strength cannot be overstated. "An order to arbitrate... should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubt should be resolved in favor of coverage." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582-83. *See also, e.g., Local 232, International Union, Allied Industrial Workers of America v. Briggs & Stratton Corp.*, 837 F.2d 782, 786(7th Cir. 1988), stating that the presumption of arbitrability can be overcome only if the contract specifically excludes a given subject from the arbitration procedures or if there is "the *most forceful evidence* of a purpose to exclude the claim from arbitration," quoting *AT&T*

*Technologies,* 475 U.S. at 650 (emphasis supplied).

The Seventh Circuit Court of Appeals recently addressed this issue in *Int'l. Brhd. of Electrical Workers, Local 21 v. Illinois Bell Telephone Co.*, 491 F.3d 685 (7th Cir. 2007), rehearing den., rehearing en banc den. at 2007 U.S. App LEXIS 21240 (7th Cir 2007), and warned that questions of arbitrability are distinct from questions as to the merits of a grievance:

> When determining whether the parties have agreed to arbitration, a court must be careful not to consider the merits of the underlying claim. [citation omitted] If the dispute falls within the scope of the parties' arbitration agreement, even a seemingly frivolous claim must be submitted to arbitration.

*Id.*, at 687.  Therein, the Seventh Circuit affirmed an order compelling arbitration of a grievance challenging the discharge of an employee for failing to meet minimum expectation under the company's newly-established performance guidelines.  Though the Union cited several contract provisions in its grievance, the Court sustained the finding of arbitrability on the broadest possible basis: that the labor contract included a recognition clause under which the company recognized the union as the employees' exclusive bargaining agent.  The court recognized that an arbitrator might interpret the recognition clause  merely to mandate refraining from dealing with another union, but it further recognized a far broader application of the clause, that an arbitrator could interpret the recognition clause to prohibit the Company  from making significant changes in the terms and conditions of employment without the union's consent:

> The recognition clause is susceptible to any number of interpretations that may impose duties of notice and negotiation upon the Company. The point is that such interpretation is the province of the arbitrator -- not of this court. So long as the recognition clause is susceptible to an interpretation wherein the Company's actions have breached its duties, and the recognition clause is encompassed by the arbitration provision, we must compel arbitration. *See AT&T Techs., 475 U.S. at 650* (citing *Warrior & Gulf, 363 U.S. at 582-83*).

8

*Id.*, at 688-89.

The court's recent *Illinois Bell* decision follows a line of rulings compelling arbitration unless it is not possible to interpret contract language in a manner that addresses the merits of the grievance. In *International Union of Operating Engineers, Local Union 103 v. Indiana Construction Corp.*, 13 F.3d 253 (7ᵗʰ Cir. 1994), an employer resisted arbitration where a labor contract excluded from arbitration any dispute between unions over the assignment of work to one union or another, and it appeared to the court that the union sought to obtain a reassignment of disputed work. Nevertheless, since the grievance could have been arbitrated under another contract provision, the court affirmed an order for arbitration, finding that the *Warrior & Gulf* standard of "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" had not been met. 13 F.3d at 259. Similarly in *Local 75, International Brotherhood of Teamsters v. Schreiber Foods, Inc.*, 213 F.3d 376 (7ᵗʰ Cir. 2000), the court affirmed a finding of arbitrability even though part of the subject matter of the grievance was explicitly excluded from the arbitration clause.

Finally, it is worth noting that the broad authority granted arbitrators to interpret collective bargaining agreements includes the authority to find implied terms in the agreements, and to base the resolution of grievances on such implied contractual terms. "[C]ontracts have implied as well as express terms, and the authority of the arbitrator to interpret a CBA includes the power to discover such terms." Northern Indiana Public Service Co. v. United Steelworkers of America, 243 F.3d 345, 348 (7ᵗʰ Cir. 2001) (inner quotations and bracket omitted), quoting Jasper Cabinet Co. v. United Steelworkers of America, 77 F.3d 1025, 1029 (7ᵗʰ Cir. 1996). See also Ethyl Corp. v. United Steelworkers of America, 768 F.2d 180, 185 (7ᵗʰ Cir. 1985).

9

**B.**      **Where the grievance is substantively arbitrable, procedural objections to arbitrability are referred to the arbitrator for resolution**

While substantive arbitrability concerns whether the dispute involves a subject matter that the parties have contractually agreed to arbitrate, procedural arbitrability concerns whether the contractual procedures leading up to arbitration have been followed, and if not, whether this failure privileges a party to avoid arbitration. *Beer Sales Drivers Local Union No. 744 v. Metropolitan Distributors*, 763 F.2d 300, 302-03 (7th Cir. 1985).

Long-settled precedent firmly establishes that questions of procedural arbitrability are matters for the arbitrator to decide and not the court. In *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557-58 (1964), the Supreme Court stated,

> Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural questions which grow out fo the dispute and bear on its final disposition should be left to the arbitrator.

*See also Zurich American Insurance Company v. Watts Industries*, 466 F.3d 577, 581 (7th Cir. 2006) ("Procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator to decide," quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

Consistent with this long settled policy, the courts have referred to arbitrators all procedural objections to arbitrability, including: timeliness (*Beer Sales Drivers, Local 744 v. Metropolitan Distributors, Inc.*, 763 F.2d 300, 302-03 (7th Cir. 1985); mootness (*Chicago Typographical Union No. 16 v. Sun-Times, Inc.*, 860 F.2d 1420 (7th Cir. 1988); failure to follow procedural steps preliminary to arbitration (*Beer Sales Drivers*, 763 F.2d at 302-03*; Niro v. Fearn Int'l, Inc.* , 827 F.2d 173, 175-76 (7th Cir. 1987); *Unite Here Local 1 v. The Standard*

10

Club, 2007 U.S. Dist. LEXIS 74919 at *10-11 (N.D. IL 2007); and other procedural questions

such as waiver, delay and the like (*Zurich American Insurance*, 466 F.3d at 581).


  **C.**  **Application of the facts to the law requires that the petition be granted and that Lechner be ordered to submit the grievance to arbitration**.

  At the risk of being presumptuous, Local 731 submits that when the grievance and the

relevant contractual language are considered in light of the controlling law, there can be no

outcome but an order compelling Lechner to submit the matter to arbitration.

  Article 29 requires arbitration over grievances involving "the interpretation or

application of, or compliance with" the CBA.  Without commenting on the ultimate merits of the

grievance – which are outside the scope of this proceeding – one need not think long to

determine that Lechner's labor contract is at least susceptible to an interpretation that Lechner's

refusal to reinstate the Local 731-represented employees who honored a picket line:

  a.  violated the Agreement's authorization for employees to honor a picket line at Lechner's facility, or alternatively was not cause for "discharge or disciplinary action" (Section 35.1);

  b.  was a suspension without pay and without cause (section 5.1);

  c.  amounted to discrimination against, interference with, restraint or coercion of the employees because of their duly authorized union activity (section 28.3);

  d.  was a discharge, suspension without pay or "other disciplinary action" without just cause (section 29.8); or

  e.  Violated the recognition clause by undermining the bargaining relationship with

Local 731 when Lechner refused to reinstate the employees who honored the

picket line while continuing to employ individuals that did not honor it (section

3.1).

Unless it may be said with *positive assurance* that *none* of the above-cited provisions could be

interpreted so as to bear on this dispute, this court must find the grievance to be substantively

arbitrable.

In contesting substantive arbitrability, Lechner has asserted only that the employees were

not "discharged," but instead were "permanently replaced," and therefore the grievance is not

arbitrable since no discharges have occurred.  (Exhibits 4 and 6).

The grievance actually alleges that the Lechner "refuse[ed] to reinstate" the employees,

rather than discharging them.  However, there can be no serious doubt that the labor contract  is

at a minimum susceptible to the interpretation that Lechner either discharged,  suspended without

pay, otherwise disciplined, or in some fashion discriminated against the employees for engaging

in Union activities.  It is sufficient for this court's purposes that any one of the above-cited

contract terms may be interpreted so as to address the dispute.  The arbitrator will determine the

grievance merits.

Lechner's other objections to arbitration are merely procedural objections since they

concern the alleged failure by Local 731 or its members to comply with the pre-arbitral

procedures set forth in the labor contract for filing and processing grievances.

Finally, Local 731 notes that the grievance asserts that Lechner's conduct violated

specified contract terms "*and all other applicable provisions of the labor contract.*"  Exhibit 2.

(emphasis added).  Insofar as arbitrators have the authority, as discussed above, to find that labor

12

contracts contain implied terms, it is important to recognize that Local 731's right to arbitrate any

non-excluded "provisions of" the CBA does not state that the terms or provisions at issue

necessarily must be *explicit* terms or provisions.  Perhaps an arbitrator would find that refusal to

reinstate employees violates some implied provision of the CBA, or perhaps the arbitrator would

find no such thing.  Once again, however, it would be within the arbitrator's authority to make

such a determination and by virtue of agreeing to the CBA and the arbitration clause it contains,

Lechner has bound itself to give Local 731 the opportunity seek just such a ruling from the

arbitrator.


## **CONCLUSION**

Local 731 respectfully asks that its petition be granted and that Lechner be ordered to

participate in submitting to arbitration the Union's July 3, 2007 grievance challenging Lechner's

refusal to reinstate certain Local 731-represented employees.


Respectfully submitted,


    /s/ Robert E. Bloch
Robert E. Bloch
One of the attorneys for plaintiff


Robert E. Bloch
Ronald W. Willis
Steven W. Jados
DOWD, BLOCH & BENNETT
8 S. Michigan Avenue, 19th floor
Chicago, IL 60603
312-372-1361